Vivian M. Arias
John M. Doherty
THOMPSON & KNIGHT LLP
*Attorneys for Plaintiff*
900 Third Avenue, 20th Floor
New York, New York 10022
(212) 751-3325

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WELLS FARGO BANK, N.A., AS TRUSTEE FOR MORGAN STANLEY CAPITAL I INC., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-IQ12, | Civil Action No. No.2:17-cv-02036-KM-MAH |
| Plaintiff, | |
| -against- | |
| LICHTER GATEWAY IV LLC, CLAIRE LICHTER, individually and in her capacity as Executrix of the ESTATE OF ALFRED LICHTER, JOSEPH SCHWARTZ, SUZETTE SCHWARTZ, THE ALFRED LICHTER 2000 FAMILY TRUST, | |
| Defendants. | |

**DECLARATION OF JAMES JORDAN IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

JAMES JORDAN being duly sworn, deposes and says:

1. I am a Director at Taconic Capital Advisors LP, and in such capacity, I have access to the books, records, and files of Four Gateway Center Note Owner LLC ("Four Gateway" or "Noteholder"), a limited liability company, and am authorized to make this Declaration.[1] Based on my personal review of Noteholder's books, records, and files, I am fully

[1] On June 14, 2018, the parties filed a Stipulation and Proposed Consent Order substituting Four Gateway Center Note Owner LLC ("Noteholder") into this action as the Plaintiff, in the place and stead of Wells Fargo Bank, N.A., as Trustee For Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2006-IQ12

familiar with the Loan (defined herein), this action, and the facts and circumstances hereinafter recited.

2. I respectfully submit this Declaration in support of Plaintiff's motion for an order granting summary judgment against defendants Lichter Gateway IV, LLC ("Lichter Gateway" or "Borrower"), Claire Lichter ("Claire"), individually and in her capacity as Executrix of the Estate of Alfred Lichter, Joseph Schwartz ("Joseph"), Suzette Schwartz ("Suzette"), The Alfred Lichter 2000 Family Trust ("The Family Trust", and together with Claire, Joseph, and Suzette, the "Defendants"), dated June 15, 2018 (the "Motion").

**BACKGROUND AND LOAN DOCUMENTS**

3. On or about October 24, 2006, Heritage Gateway, LLC ("Heritage"), Marine One Associates III, LLC ("Marine"), Ridgewood 2000 Associates III, LLC ("Ridgewood"), JPG Real Estate III, LLC ("JPG"), and Ivy Gateway, LLC ("Ivy" and together with Heritage, Marine, Ridgewood and JPG, collectively, the "Original Borrower") executed that certain Promissory Note (the "Note") evidencing a loan made by LaSalle Bank National Association ("Original Lender") to Original Borrower in the principal amount of $61,000,000.00 (the "Loan"). (*See* Complaint (attached as Exhibit 1 to the Declaration of Vivian M. Arias in Support of Motion for Summary Judgment (the "Arias Decl."), at Ex. A).

4. On or about October 24, 2006, Original Borrower entered into that certain Loan Agreement (the "Loan Agreement"), with Original Lender. (*See* Complaint, Ex. B).

5. The maturity date under the Note occurred on November 1, 2016 (the "Maturity Date").

("Wells Fargo"), which is pending signature by the Court. For purposes of this Motion, Noteholder, Wells Fargo, and their predecessors-in-interest, as appropriate, are collectively referred to herein as "Plaintiff."

6. Repayment of the Note is secured by, among other things, that certain Mortgage and Security Agreement (the "Mortgage"), dated October 25, 2006, executed by Original Borrower, as mortgagor, to Original Lender, as mortgagee. The Mortgage, having been first duly acknowledged, was recorded on October 30, 2006 with the Essex County Register, New Jersey (the "Clerk's Office") at Book 11600, page 868 as Instrument No. 6158038. (*See* Complaint, Ex. C).

7. Repayment of the Note is further secured by, among other things, that certain Assignment of Leases and Rents (the "Assignment of Leases") dated as of October 25, 2006, executed by Original Borrower to Original Lender. The Assignment of Leases was recorded with the Clerk's Office on October 30, 2006 at Book 11600, page 888 in the Mortgage Book Index as Instrument No. 6158040. (*See* Complaint, Ex. D).

8. The Note, Loan Agreement, Mortgage, Assignment of Leases, together with all other documents and agreements evidencing and/or securing the Loan are collectively referred to as the "Original Loan Documents."

**<u>FIRST ASSIGNMENT OF LOAN AND LOAN DOCUMENTS</u>**

9. Original Lender assigned the Loan and the Original Loan Documents to Wells Fargo.

10. In connection with the assignment to Wells Fargo, Original Lender executed and delivered to Wells Fargo the following documents:

(a) that certain Allonge executed by Original Lender to Wells Fargo. (*See* Complaint, Ex. E).

(b) that certain Assignment of Mortgage and Security Agreement, dated effective as of December 21, 2006, which was properly recorded with the Clerk's Office on May 30, 2007, at Book 12059, Page 1227 as Instrument No. 7070234. (*See* Complaint, Ex. F).

(c) that certain Omnibus Assignment of Loan Documents, dated effective as of December 21, 2006, assigning to Wells Fargo, among other things, the Guaranty. (*See* Complaint, Ex. G).

11. As a result of the transaction described above, evidenced by each of the written assignments, Wells Fargo became the owner and holder of the Note, the Mortgage, the Assignment of Leases, and each and all of the other Original Loan Documents. As discussed further below, after the commencement of this action, the Loan and Loan Documents were subsequently assigned to Noteholder, who is the current owner and holder of the Note, the Mortgage, the Assignment of Leases, and each and all of the other Original Loan Documents.

**FIRST ASSUMPTION OF THE LOAN AND LOAN DOCUMENTS**

12. On or about June 12, 2009, Ivy transferred 24% of its initial 40% ownership interest in the Mortgaged Premises to Newark 300, LLC ("Newark Borrower") and Newark Borrower agreed to become jointly and severally liable as tenants-in-common with Original Borrower for the obligations of Original Borrower under the Original Loan Documents (the "Newark Borrower Assumption").

13. In connection with the Newark Borrower Assumption, Original Borrower, Original Guarantor and Newark Borrower executed and delivered to Wells Fargo, among other things, that certain Assumption Agreement dated September 16, 2009, which was properly recorded with the Clerk's Office on October 2, 2009, at Book 12220, Page 4691 as Instrument No. 9085615 (the "Newark Borrower Assumption Agreement"). (*See* Complaint, Ex. H).

**SECOND ASSUMPTION OF THE LOAN AND LOAN DOCUMENTS**

14. On or about January 3, 2011, the Original Borrower and Newark Borrower transferred the Mortgaged Premises to Borrower. Borrower, Claire Lichter, Alfred Lichter,[2]

---

[2] After signing the Guaranty, Alfred Lichter passed away. Thus, Claire is named both in her individual capacity and in her capacity as the Executrix of the Estate of Alfred Lichter.

Joseph Schwartz, Suzette Schwartz, and The Alfred Lichter 2000 Family Trust (together with Claire, Alfred Lichter, Joseph Schwartz, and Suzette Schwartz, collectively, "Guarantor") assumed all obligations under the Loan Documents and released the Original Borrower, Newark Borrower, and Original Guarantor from certain obligations pursuant to the Loan Documents, subject to the provisions set forth in the Borrower Assumption Agreement (defined below) (the "Borrower Assumption").

15. In connection with the Borrower Assumption, Wells Fargo, Borrower, Original Borrower, Newark Borrower, as well as Steven Greenberg, Jeffrey Greenberg, and Ivy Equities, L.L.C. (collectively, the "Original Guarantor") executed that certain Assumption and Release Agreement (the "Borrower Assumption Agreement"), dated January 3, 2011 and recorded with the Clerk's Office on January 10, 2011 at Book 12291, Page 5216, Instrument Number 11002811. (*See* Complaint, Ex. I).

16. In connection with the Borrower Assumption, Guarantor executed and delivered to Wells Fargo that certain Guaranty (the "Guaranty"), dated January 3, 2011, by Guarantor for the benefit of Plaintiff. (*See* Complaint, Ex. J).

17. Pursuant to Section 1.1 of the Mortgage, Borrower granted Wells Fargo a security interest in, *inter alia*, all machinery, equipment, goods, inventory, fixtures, and other personal property located on the Mortgaged Premises (collectively, the "Personal Property"), as further security for repayment of the Note.

18. Such security interest in Original Borrower's Personal Property was perfected by:

(a) that certain UCC-1 Financing Statement ("Delaware UCC"), filed with the Delaware Department of State on January 6, 2011 at Filing No. 20110358922 and continued by that certain UCC-3 continuation filed on September 15, 2015 at Filing No. 20154615836. (*See* Complaint, Ex. K).

(b) that certain UCC-1 Financing Statement ("County UCC"), recorded with the Clerk's Office on January 30, 2017 as Instrument Number 2017008503. (*See* Complaint, Ex. L).

19. The Original Loan Documents, together with the Newark Borrower Assumption Agreement, Borrower Assumption Agreement, Guaranty, Delaware UCC and County UCC are hereinafter referred to as the "Loan Documents."

20. Pursuant to the above-described assumption, release and/or transfer of the Loan Documents and Mortgaged Premises, Borrower and Guarantor are the current obligors and under the Loan Documents.

**<u>SECOND ASSIGNMENT OF LOAN AND LOAN DOCUMENTS</u>**

21. On May 11, 2018, Wells Fargo assigned the Loan and all Loan Documents, including the Note and Mortgage, to Noteholder.

22. In connection with the assignment to Noteholder, Wells Fargo executed and delivered to Noteholder the following documents:

a. that certain Allonge executed by Wells Fargo to Noteholder, a copy of which is annexed hereto as Exhibit 1.

b. that certain Assignment of Mortgage and Security Agreement, dated effective as of December 21, 2006, which was properly recorded with the Clerk's Office on May 30, 2007, at Book 12059, Page 1227 as Instrument No. 7070234, a copy of which is annexed hereto as Exhibit 2.

c. that certain Assignment of Leases and Rents, dated effective as of December 21, 2006, which was properly recorded with the Clerk's Office on May 30, 2007, at Book 12059, Page 1235 as Instrument No. 7070237, a copy of which is annexed hereto as Exhibit 3.

d. that certain UCC-1 Financing Statement ("County UCC"), recorded with the Clerk's Office on May 30, 2018 as Instrument No. 2018046705, a copy of which is annexed hereto as Exhibit 4.

e. that certain UCC-1 Financing Statement ("Delaware UCC"), filed with the Delaware Department of State on May 30, 2018 at Filing No. 20183655541, a copy of which is annexed hereto as Exhibit 5.

23. As of the date hereof, as a result of the transaction described above, evidenced by each of the written assignments, Noteholder is the owner and holder of the Note, the Mortgage, the Assignment of Leases, and each and all of the other Original Loan Documents.

**BORROWER'S AND GUARANTOR'S DEFAULTS**

24. Borrower is in default of its obligations to Noteholder under the Note and Mortgage based on, among other things, Borrower's failure to timely pay all amounts required by the Loan Documents on the Maturity Date (the "Maturity Default").

25. This failure constitutes an event of default as defined under the Loan Documents. Accordingly, Plaintiff demanded payment of the Loan and informed the Borrower of their default in accordance with the terms of the Loan Documents by that certain Notice of Maturity Default and Demand for Payment letter sent to Borrower and Guarantor on January 4, 2017 (the "Notice of Maturity Default"). (*See* Complaint, Ex. M).

26. Borrower has failed to cure such defaults, despite demand for payment under the Notice of Maturity Default.

27. Borrower was informed of the Maturity Default and demand was made upon Borrower to pay all sums due under the Loan Documents (collectively, the "Indebtedness").

28. To date, Borrower has failed to pay the Indebtedness due under the Loan Documents, and Borrower remains in default.

29. The Guaranty is what is known in the industry as a "bad boy," "springing recourse," or "carve-out" guaranty.

30. The Loan is generally a non-recourse obligation, but the Loan Documents contain a carve-out clause providing that the debt becomes fully recourse if certain enumerated "recourse" events occur, triggering "springing" recourse liability (the "Recourse Triggers").

31. Section 11.22 of the Loan Agreement (incorporated into the Note at Section 8) and Section 1.2 of the Guaranty set forth the "springing recourse events" that render the Loan fully recourse to Borrower and Guarantors, respectively.

32. Specifically, the Loan becomes fully recourse to the Borrower and Guarantor in the event that, among other things, "Borrower fails to obtain Lender's prior consent to any subordinate financing or other voluntary Lien encumbering the Property."

33. Pursuant to Section 1.1 of the Guaranty, Guarantor is liable for the Guaranteed Obligations (defined below) and "irrevocably and unconditionally guarantee[d] to [Noteholder] the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise." (*See* Complaint, Ex. J, p. 1).

34. Pursuant to Section 1.2 of the Guaranty, the term "Guaranteed Obligations" is defined to include the Recourse Triggers. (*See* Complaint, Ex. J, p. 1).

35. The following liens (the "Concourse Liens") were filed against Borrower and the Mortgaged Premises:

(a) Notice of Assessment Lien by Concourse Association against the Mortgaged Premises for a lien in the amount of $103,510.56, recorded on July 19, 2013 in the Clerk's Office at Book 12446, Page 6425 as Instrument No. 13064539.

(b) Notice of Assessment Lien by Concourse Association against the Mortgaged Premises for a lien in the amount of $262,152.87, recorded on June 10, 2015 in the Clerk's Office at Book 12558, Page 7040 as Instrument No. 15044326.

(c) Notice of Assessment Lien by Concourse Association against the Mortgaged Premises for a lien in the amount of $340,191.32, recorded on March 16, 2016 in the Clerk's Office as Instrument No. 2016023085.

36. At no time before or after the Concourse Liens were filed, did Borrower obtain the prior consent of Plaintiff to the Concourse Liens.

37. Borrower has defaulted under Section 11.22 of the Loan Agreement and Guarantor has defaulted under the Guaranty.

38. Accordingly, Borrower and Guarantor are liable for the full amount of the Indebtedness as a result of Borrower's failure to obtain Noteholder's prior consent to the voluntary Concourse Liens encumbering the Mortgaged Premises and the Recourse Events.

39. Noteholder has complied with all the terms and provisions of the Loan Documents.

## CALCULATION OF AMOUNT DUE

40. I have examined Noteholder's records concerning the Note and Mortgage, and I find from the records that there is currently due Noteholder under the Note the principal sum of $56,166,843.00.

41. Attached hereto as Schedule A is the calculation of the amount due to Noteholder as of June 15, 2018.

42. The Note (which incorporates the terms of the Loan Agreement) provides for interest at a rate of 5.96% per annum (the "Applicable Interest Rate"), which is to be calculated on the basis of a 360 day year and paid for the actual number of days elapsed.

43. Noteholder is entitled to interest at the Applicable Interest Rate in the amount of $2,389,774.35 through June 15, 2018.

44. The Note (which incorporates the terms of the Loan Agreement) also provides for a default interest rate (the "Default Rate") that applies in the event of a default by Borrower. The Default Rate is five percent (5%) above the Applicable Interest Rate in effect at the time of the occurrence of the event of default.

45. Noteholder is entitled to interest at the Default Rate in the amount of $4,632,445.26 through June 15, 2018.

46. Noteholder is entitled to continuing *per diem* interest from and after June 15, 2018 at the Applicable Interest Rate and Default Rate in the aggregate amount of $19,099.4854 per day until the sale of the Mortgaged Premises.

47. Pursuant to the Mortgage, at Sections 9.1 and 15.2, Borrower must pay all of Noteholder's expenses incurred in any efforts to enforce any terms of the Mortgage, including, but not limited to, reasonable legal fees and disbursements, foreclosure costs, and title charges, as well as all protective advances made by Noteholder (the "Property Protection Advances"). Therefore, Noteholder is entitled to recover each of the following: (1) service administration fee in the amount of $300; (2) quote revision fee in the amount of $117.00; and (3) legal fees and expenses.

48. There are no just debts, set-offs, credits or allowances due or to become due from the Noteholder to Defendants, other than those set forth herein

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: June 14, 2018

JAMES JORDAN

**SCHEDULE TO AFFIDAVIT OF AMOUNT DUE**

| | |
|---|---|
| Obligation bearing date of: | November 1, 2016 |
| In the sum of: | $61,000,000.00 |
| Rate of Interest: | 5.96% |
| Default Rate of Interest: | 5% |
| Default Date: | November 1, 2016 |

| | | |
|---|---|---|
| Principal balance as of June 15, 2018 | | $56,166,843.00 |
| Interest at the rate of 5.96% from October 1, 2017 through June 15, 2018 ( 222 days at *per diem* $10,764.7493) | | $ 2,389,774.35 |
| Default interest at the rate of 5% from November 1, 2016 through June 15, 2018 (565 days at *per diem* $8,331.73608) | | $ 4,632,445.26 |
| Service Administrative Fees | | $ 417.00 |
| Less Escrow/Reserve Balance | | |
| Suspense | ($ 945,601.15) | |
| Tax Reserve | ($ 287.88) | |
| Insurance Reserve | ($ 76,244.62) | |
| General Reserve | ($1,900,471.18) | |
| Total Escrows/Reserves | | ($2,922,604.83) |
| **Total Amount Due** | | $60,266,874.78 |

*Per Diem* Interest $19,099.4854