# EXHIBIT 6

Case 2:17-cv-02036-KM-MAH Document 64-1 Filed 05/05/17 Page 1 of 14 PageID: 1322

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WELLS FARGO BANK, N.A., AS TRUSTEE FOR MORGAN STANLEY CAPITAL I INC., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-IQ12, Plaintiff, -against- LICHTER GATEWAY IV LLC, CLAIRE LICHTER, individually and in her capacity as Executrix of the ESTATE OF ALFRED LICHTER, JOSEPH SCHWARTZ, SUZETTE SCHWARTZ, THE ALFRED LICHTER 2000 FAMILY TRUST, and GATEWAY CONCOURSE ASSOCIATION, INC., Defendants. | Civil Action No.2:17-cv-02036-KM-MAH |

**DECLARATION OF MICHAEL NIKULA IN SUPPORT**
**OF PLAINTIFF' S PETITION FOR APPOINTMENT OF RECEIVER**

I, Michael Nikula, declare under penalty of perjury that the following facts are true and correct to the best of my information and belief:

1. I am a Servicing Officer of C-III Asset Management LLC (f/k/a ARCap Servicing, Inc.) the Special Servicer for Wells Fargo Bank, N.A., as Trustee for Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2006-IQ12 ("Plaintiff") and am authorized to give this Affidavit on behalf of Plaintiff. I am familiar with the loan (the "Loan") at issue in this matter as I have had the primary responsibility of overseeing the Loan since Defendant Lichter Gateway IV LLC ("Borrower") defaulted in its obligations under the Loan Documents. I am also familiar with the facts of this Affidavit.

**Background and the Loan Documents**

2. On or about October 24, 2006, Heritage Gateway, LLC ("Heritage"), Marine One Associates III, LLC ("Marine"), Ridgewood 2000 Associates III, LLC ("Ridgewood"), JPG Real Estate III, LLC ("JPG"), and Ivy Gateway, LLC ("Ivy" and together with Heritage, Marine, Ridgewood and JPG, collectively, the "Original Borrower") executed that certain Promissory Note (the "Note") evidencing a loan made by LaSalle Bank National Association ("Original Noteholder") to Original Borrower in the principal amount of $61,000,000.00. A true and correct copy of the Note is attached hereto as Exhibit A.

3. On or about October 24, 2006, Original Borrower entered into that certain Loan Agreement (the "Loan Agreement"), with Original Lender. A true and correct copy of the Loan Agreement is attached hereto as Exhibit B.

4. Repayment of the Note is secured by, among other things, that certain Mortgage and Security Agreement (the "Mortgage"), dated October 25, 2006, executed by Original Borrower, as mortgagor, to Original Noteholder, as mortgagee, encumbering the real property and improvements known as and located at 100 Mulberry Street, Newark, New Jersey 07102, also known as Block 151, Lot 121, as shown on the Official Tax Map of the City of Newark in the County of Essex, State of New Jersey (as more particularly described in the Mortgage (as defined below), the "Mortgaged Premises"). The Mortgage, having been first duly acknowledged, was recorded on October 30, 2006 with the Essex County Register, New Jersey (the "Clerk's Office") at Book 11600, page 868 as Instrument No. 6158038. A true and correct copy of the Mortgage is attached hereto as Exhibit C.

5. Repayment of the Note is further secured by, among other things, that certain Assignment of Leases and Rents (the "Assignment of Leases") dated as of October 25, 2006,

executed by Original Borrower in favor of Original Lender. The Assignment of Leases was recorded with the Clerk's Office on October 30, 2006 at Book 11600, page 888 as Instrument No. 6158040. A true and correct copy of the Assignment of Leases is attached hereto as Exhibit D.

6. The Assignment of Leases constituted a present, absolute and executed assignment, subject to the conditional license given to Original Borrower to collect, hold and use the Rents to the extent provided in the Mortgage. *See* Exhibit D.

7. Pursuant to Section 1.1 of the Mortgage, Original Borrower granted a security interest in, *inter alia*, all machinery, equipment, goods, inventory, fixtures, and other personal property located on the Mortgaged Premises (collectively, the "Personal Property"), as further security for repayment of the Note. Such security interest in the Personal Property was perfected by that certain UCC-1 Financing Statement (the "UCC"), filed on January 6, 2011 with the Delaware Department of State as Filing No. 20110358922. A true and correct copy of the UCC is attached hereto as Exhibit E.

8. The Note, Mortgage, Amendment, Assignment of Leases, and UCC, together with all other documents and agreements evidencing and/or securing the Loan are collectively referred to as the "Original Loan Documents."

**Transfer and Assignment of the Loan and Loan Documents to Plaintiff**

9. Original Noteholder assigned the Loan and the Original Loan Documents, including the Note and Mortgage, to Plaintiff. In connection with the assignment to Plaintiff, Original Noteholder executed and delivered to Plaintiff the following documents:

(a) that certain Allonge (the "Allonge") executed by Original Noteholder to Plaintiff, a true and correct copy of which is attached hereto as Exhibit F.

(b) that certain Assignment of Mortgage and Security Agreement (the "Assignment of Mortgage"), dated effective as of December 21, 2006,

which was properly recorded with the Clerk's Office on May 30, 2007, in Book 12059, Page 1227 as Instrument No. 7070234, a true and correct copy of which is attached hereto as Exhibit G.

(c) that certain Omnibus Assignment of Loan Documents (the "Omnibus Assignment"), dated effective as of December 21, 2006, assigning all other Loan Documents to Plaintiff, a true and correct copy of which is attached hereto as Exhibit H.

10. As of the date hereof, as a result of the transaction described above, evidenced by each of the written assignments, Plaintiff is the owner and holder of the Note, the Mortgage and each and all of the other Original Loan Documents.

**Assumption of Original Loan Documents by Newark Borrower**

11. On or about June 12, 2009, Ivy transferred 24% of its initial 40% ownership interest in the Mortgaged Premises to Newark 300, LLC ("Newark Borrower") and Newark Borrower agreed to become jointly and severally liable as tenants-in-common with Original Borrower for the obligations of Original Borrower under the Original Loan Documents (the "Newark Borrower Assumption").

12. In connection with the Newark Borrower Assumption, Original Borrower, Original Guarantor and Newark Borrower executed and delivered to Plaintiff, among other things, that certain Assumption Agreement dated September 16, 2009, which was properly recorded with the Clerk's Office on October 2, 2009, at Book 12220, Page 4691 as Instrument No. 9085615 (the "Newark Borrower Assumption Agreement"), a true and correct copy of which is attached hereto as Exhibit I.

**Assumption of Original Loan Documents by Borrower**

13. On or about January 3, 2011, the Original Borrower and Newark Borrower transferred the Mortgaged Premises to Borrower. Borrower and Alfred Lichter ("Alfred"), Claire Lichter ("Claire"), Joseph Schwartz ("Joseph"), and Suzette Schwartz ("Suzette"), and

The Alfred Lichter 2000 Family Trust ("Lichter Trust" and together with Alfred, Claire, Joseph, and Suzette, the "Guarantor") assumed all obligations under the Loan Documents and released the Original Borrower and Original Guarantor from certain obligations pursuant to the Loan Documents, subject to the provisions set forth in the Borrower Assumption Agreement (the "Borrower Assumption").

14. In connection with the Borrower Assumption, Plaintiff, Borrower, Newark Borrower, Original Borrower and Original Guarantor executed that certain Assumption and Release Agreement (the "Borrower Assumption Agreement"), dated January 3, 2011 and recorded with the Clerk's Office on January 10, 2011 at Book 12291, Page 5216, Instrument Number 11002811. A true and correct copy of the Borrower Assumption Agreement is attached hereto as Exhibit J.

15. In connection with the Borrower Assumption, Guarantor executed and delivered to Plaintiff that certain Guaranty (the "Guaranty"), dated January 3, 2011 by Guarantor for the benefit of Plaintiff, a true and correct copy of which attached hereto as Exhibit K.

16. Pursuant to Section 1.1 of the Mortgage, Borrower granted Plaintiff a security interest in, *inter alia*, all machinery, equipment, goods, inventory, fixtures, and other personal property located on the Mortgaged Premises (collectively, the "Personal Property"), as further security for repayment of the Note.

17. Such security interest in Original Borrower's Personal Property was perfected by:

(a) that certain UCC-1 Financing Statement ("Delaware UCC"), filed with the Delaware Department of State on January 6, 2011 at Filing No. 20110358922 and continued by that certain UCC-3 continuation filed on September 15, 2015 at Filing No. 2015461536, true and correct copies of which are attached hereto as Exhibit L.

(b) that certain UCC-1 Financing Statement ("County UCC"), recorded with the Clerk's Office on January 30, 2017 as Instrument No. 2017008503, true and correct copy of which is attached hereto as Exhibit M.

18. The Original Loan Documents, together with the Newark Borrower Assumption Agreement, Borrower Assumption Agreement, Guaranty, Delaware UCC and County UCC are hereinafter referred to as the "Loan Documents."

19. Pursuant to the above-described assumption, release and/or transfer of the Loan Documents and Mortgaged Premises, Borrower and Guarantor are the current obligors and under the Loan Documents.

**Borrower's Default under the Loan Documents**

20. Borrower is in default of its obligations to Plaintiff under the Note and Mortgage based on, among other things, Borrower's failure to pay all amounts due under the terms of the Loan Documents (collectively, the "Indebtedness") on November 1, 2016 (the "Maturity Date").

21. This failure constitutes an Event of Default as defined under the Loan Documents.

22. Accordingly, Plaintiff declared the Loan in default in accordance with the terms of the Loan Documents by that certain Notice of Maturity Default and Demand for Payment letter sent to Borrower and Guarantor on January 4, 2017 (the "Notice of Maturity Default"), a true and correct copy of which is attached hereto as Exhibit N.

23. Borrower has failed to cure such defaults, despite demand under the Notice of Maturity Default.

24. To date, Borrower has failed to pay the Indebtedness due under the Loan Documents, and Borrower remains in default.

25. As of March 28, 2017, there is due, owing, and payable to Plaintiff the following Indebtedness under the Loan Documents: (i) $56,959,629.12 in principal; (ii) accrued and unpaid interest at the contract and default rates; (iii) late charges; (iv) attorneys' fees, costs and expenses

associated with the default under the Loan Documents, including costs of this action; and (v) all other sums provided for under the Loan Documents.

**A Receiver Should Be Appointed for the Mortgaged Premises**

26. The appointment of a receiver is warranted in this case due to, among other things, Borrower's failure to maintain the Mortgaged Premises and allowing the its conditions to fall into disrepair.

27. The Mortgaged Premises is a large, 15 story plus basement commercial office building in Newark, New Jersey, consisting of approximately 315,936 square feet of space. The Mortgaged Premises has a current occupancy rate of 63% and approximate annual rental revenues of $8,593,388.00 in the year 2016, down significantly from the $9,732,660.00 in the year 2013.

28. The Mortgaged Premises are part of the Gateway Center, and commonly referred to as Gateway IV. It shares a concourse and walkways with other buildings in the Gateway Center. To facilitate the maintenance of such common areas, the owners of the various buildings in the Gateway Center (including Borrower, who owns Gateway IV) entered into that certain that certain Amended and Restated Grant and Agreement, dated as of December 21, 1999 and recorded with the Clerk's Office on December 27, 1999 at Deed Book 5664, Page 680 (the "Concourse Agreement"), which established the Concourse Association. Pursuant to the Concourse Agreement, the Concourse Association is responsible for maintaining the common areas, and charges assessments to the owners, including Borrower, for such maintenance costs. Upon information and belief, in December 2012, Borrower voluntarily ceased payment of certain Concourse Assessments. The Borrower's failure to pay the Concourse Assessments is an Event

Case 2:17-cv-02036-KM-MAH Document 6-1 Filed 05/05/17 Page 8 of 11 PageID: 329

of Default under the Concourse Agreement and permits the Concourse Association to file liens against the Mortgaged Premises.

29. The Concourse Association filed the following liens (the "Concourse Liens") against Borrower and the Mortgaged Premises:

(a) Notice of Assessment Lien from Concourse Association against the Mortgaged Premises for a lien in the amount of $103,510.56, recorded on July 19, 2013 in the Clerk's Office at Book 12446, Page 6425 as Instrument No. 13064539.

(b) Notice of Assessment Lien from Concourse Association against the Mortgaged Premises for a lien in the amount of $262,152.87, recorded on June 10, 2015 in the Clerk's Office at Book 12558, Page 7040 as Instrument No. 15044326.

(c) Notice of Assessment Lien from Concourse Association against the Mortgaged Premises for a lien in the amount of $340,191.32, recorded on March 16, 2016 in the Clerk's Office as Instrument No. 2016023085.

30. Upon information and belief, the Concourse Association has also commenced an action against Borrower in connection with the Concourse Liens that is currently pending in the Superior Court of New Jersey, Law Division, bearing Docket No. L-1075-15.

31. We have been advised that as a result of the unpaid Concourse Assessments and Concourse Liens, the Concourse Association has ceased maintaining the concourses and walkways at or near the Mortgaged Premises.

32. Specifically, at least one tenant has complained that an escalator and revolving door, which provide access to tenants of the Mortgaged Premises are broken and have remained unrepaired, and the broken escalator is (or until recently was) blocked off and marked with yellow caution tape.

33. As a result of the deteriorating conditions in the concourses and walkways at or near the Mortgaged Premises, a tenant at the Mortgaged Premises has declared an event of default against the Borrower under the terms of its lease.

Case 2:17-cv-02036-KM-MAH Document 6-1 Filed 05/05/17 Page 9 of 11 PageID: 380

34. Neither the Borrower nor the Concourse Association have provided notice to Plaintiff of Borrower's default under the Concourse Agreement, or the existence of the Concourse Liens.

35. Throughout the years during which Borrower has voluntarily withheld payment of the Concourse Assessments, Borrower has:

(a) submitted to Plaintiff annual operating statements reflecting that the Borrower incurred annual operating expenses by paying "association fees" in the amounts of $111,093 in 2013, $113,904 in 2014, $113,904 in 2015, and $116,196 in 2016;

(b) failed or omitted to notify Plaintiff that Borrower was voluntarily withholding payment of the Concourse Assessments;

(c) provided budgets to Plaintiff showing the Concourse Assessments as budgeted costs and expenses associated with the Mortgaged Premises that the Borrower intended to pay;

(d) requested the release of funds from Plaintiff to cover the budgeted costs of the Concourse Assessments;

(e) obtained the funds from Plaintiff for such budgeted costs;

(f) misappropriated, misapplied, converted and/or failed to use such funds for the purpose of paying the Concourse Assessments;

(g) permitted the Concourse Liens to be filed against the Mortgaged Premises; and

(h) permitted waste of the Mortgaged Premises to occur by virtue of the deteriorating conditions, including the broken escalators and revolving doors, and damaged relationships with tenants.

36. Despite requests and notices from the Concourse Association, Borrower has failed to pay or extinguish any of the Concourse Liens which are currently threatening Plaintiff's collateral.

37. Despite requests and notices from at least one tenant, Borrower has failed to maintain the Mortgaged Premises, has allowed the Mortgaged Premises to fall into disrepair, has permitted waste to occur, and has collected and kept for itself amounts that should have been paid to maintain the Mortgaged Premises.

Case 2:17-cv-02036-KM-MAH Document 6-1 Filed 05/05/17 Page 10 of 11 PageID: 331

38. As a result of the issues at the Mortgaged Premises, the present realizable value of Plaintiff's collateral is significantly less than what is necessary to secure repayment of the sums due under the Note, leaving Plaintiff under-secured and the Mortgaged Premises underwater.

39. In order to protect Plaintiff's lien and its rights under the Mortgage, it is necessary for a judicially-appointed receiver to take possession of the Mortgaged Premises, and that the receiver be authorized to:

(a) collect all rents;

(b) make all necessary disbursements in connection with the maintenance of the Mortgaged Premises, including, without limitation, payments to third party vendors for services rendered for the benefit of the Mortgaged Premises;

(c) pay all taxes, water and sewer charges, and to pay all meter charges, insurance, Concourse Assessments and such other obligations as are due and owing; and

(d) take all other measures as permitted under Section 7.1 of the Mortgage in connection with the care and preservation of the Mortgaged Premises.

40. The Plaintiff respectfully submits that James Postell, a Partner at Transwestern Consulting Group, be appointed as Receiver for the Mortgaged Premises. Mr. Postell has more than 30 years of experience, expertise in receivership and commercial real estate management in New Jersey. A proposed fee structure for Mr. Postell is set forth at Exhibit O.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Jacksonville, Cherokee County, Texas on: May 2, 2017



Michael Nikula
Servicing Officer
CIII Asset Management LLC