# EXHIBIT 8

**LOWENSTEIN SANDLER LLP**
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: 973.597.2500

*Attorneys for Defendants Lichter Gateway IV LLC, Claire Lichter, Individually and In Her Capacity as Executrix of the Estate of Alfred Lichter, Joseph Schwartz, Suzette Schwartz, and The Alfred Lichter 2000 Family Trust*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WELLS FARGO BANK, N.A., AS TRUSTEE FOR MORGAN STANLEY CAPITAL I INC., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-IQ12,<br><br>Plaintiff,<br><br>-against-<br><br>LICHTER GATEWAY IV LLC, CLAIRE LICHTER, individually and in her capacity as Executrix of the ESTATE OF ALFRED LICHTER, JOSEPH SCHWARTZ, SUZETTE SCHWARTZ, THE ALFRED LICHTER 2000 FAMILY TRUST, and GATEWAY CONCOURSE ASSOCIATION, INC.,<br><br>Defendants | Document Filed Electronically<br><br>Civil Action No. 2:17-cv-02036-KM-MAH<br><br>DECLARATION OF STEVEN GREENBERG |

I, STEVEN GREENBERG, declare under penalty of perjury that the following facts are true and correct to the best of my information and belief:

1. I am Principal of Heritage Newark Management Company, LLC ("Heritage"). All of the facts and circumstances set forth herein are based on my personal knowledge. I submit this declaration in support of Defendants Lichter

Case 2:17-cv-02036-KM-MAH Document 13-4 Filed 06/19/17 Page 2 of 9 PageID: 793

Gateway IV LLC ("Lichter Gateway"), Claire Lichter, individually and in her capacity as executrix of the estate of Alfred Lichter, Joseph Schwartz, Suzette Schwartz, and the Alfred Lichter 2000 Family Trust's (collectively, the "Lichter Defendants") Opposition to Plaintiff Wells Fargo Bank, N.A.,'s ("Wells Fargo") Motion for Appointment of a Receiver.

**Lichter Gateway and Heritage as Property Manager of Gateway IV**

2. In 2011, Lichter Gateway took over management and maintenance responsibilities of the Gateway IV office building and ground floor café. Heritage was engaged as property manager for Gateway IV. Heritage and related operations currently manage over 1.5 million square feet of real estate in Newark, New Jersey, of which 700,000 square feet is Class A commercial office space.

3. While Heritage maintains Gateway IV on behalf of Lichter Gateway, the Gateway Concourse Association, Inc. (the "Concourse Association"), is and has had sole responsibility for maintaining and repairing all the adjoining areas among the Gateway Center, which include the common entrance and concourse areas of Gateways III and IV. The Concourse Association is managed by Advance Realty Management, Inc. ("Advance") and by the owners of Gateway I.

**Deficiencies and Disrepair by the Concourse Association**

4. Since the outset, Heritage and Lichter Gateway have encountered problems with the Concourse Association related to the Concourse Association's refusal to remedy defects and disrepair to the common areas that

include, among other problems, frequently inoperable escalators entering Gateway IV.

5. The Concourse Association is run by the owners of the Gateway I building and Advance, the management company that services the Gateway I building and manages the Concourse Association. From my observation, the Concourse Association has been run for the benefit of the Gateway I building and to the detriment of Gateway IV. I believe that this has led to the Concourse Association's failure to properly maintain and/or repair the concourse adjacent to Gateway IV.

6. Such failures by the Concourse Association were the subject of multiple meetings between the Concourse Association and Lichter Gateway. These meetings were attended by myself and/or other members of my team at Heritage on behalf of Lichter Gateway. The Concourse Association occasionally brought in contractors to make proposals to address the issues, but has never signed-off on the needed work or caused the work to be completed.

7. The Concourse Association has not maintained and/or repaired the escalators that support the 100 Mulberry Street entrance to the concourse near the Gateway IV building. The escalators frequently break down almost every other month and are usually inoperable for weeks at a time. The escalators are in need of a major refurbishment or replacement. (True and correct copies of photographs showing the disrepair to the escalators and entrance are attached as Exhibit 1).

8. There are renovations and repairs that are required to the general area of the concourse surrounding the escalators at the street level between

the Gateway IV and Gateway III buildings. The sharp, metal base trim is loose and/or missing from the wall. The walls in the general area of the concourse have not been cleaned or painted in more than 15 years. The structural steel above the revolving doors has a layer of dust approximately one inch thick sitting on top of tubing. (True and correct copies of photographs showing disrepair to walls, base trims, along with areas of dirt, dust, and old paint are attached as Exhibit 2).

9. The entrance doors to the concourse from 100 Mulberry Street need to be replaced. The revolving doors frequently break down; however, repairs are difficult because of the age of the doors and the difficulty in acquiring parts. Currently, only one set of the double doors is functioning, but they are too heavy and tend to slam shut. The replacement of the doors was approved by the Concourse Association in 2012, but was diverted to other repairs when the Concourse Association failed to pursue insurance proceeds. (True and correct copies of photographs showing disrepair to entrance doors are attached as Exhibit 3).

10. The canopy glass in the atrium of the concourse between the Gateway IV and Gateway III buildings has not been properly repaired. The Concourse Association did not repair the atrium and did not take proper steps to get the owner of the Gateway III building to properly perform the repairs. Approximately 50 glass panels in the atrium were damaged during Hurricane Sandy in 2012. When the panels were replaced in 2012 and 2013, the wrong color glass was used. The substantial variation in the color of the glass panels in the atrium canopy has never been corrected. (True and correct copies of photographs

showing disrepair to the glass canopy and variations in the glass panels are attached as Exhibit 4).

11. It appears that the Concourse Association did not properly and/or diligently pursue potential insurance claims with respect to the damage caused by Hurricane Sandy or improperly used funds from all Gateway owners to pay for repairs that otherwise should have been covered by insurance maintained either by the Concourse Association or the owner of the Gateway III building. As noted, in 2012, the Concourse Association diverted funds designated for door replacement to replace the atrium roof glass damage from Hurricane Sandy. The atrium ceiling is owned and maintained by another Gateway owner, which was supposed to reimburse the funds from insurance proceeds. The Concourse Association never followed through with respect to such reimbursement.

12. Several columns on both sides of the concourse level in front or near the entrance lobbies of the Gateway IV and Gateway III buildings are damaged at the base. The concourse level exit doors to the Gateway III garage have been neglected for years and are in visible disrepair. The roof has leaked for years, causing staining and peeling of paint that has not been remedied. In addition, the Concourse Association has not undertaken to perform regular maintenance and repairs to the concourse in the area of the Gateway IV and Gateway III buildings, including, but not limited to, a lack of moldings, failure to clean and/or repair the floor and failure to paint the walls and ceiling. (True and correct copies of photographs showing lack of necessary regular maintenance are attached as Exhibit 5).

13. There is no proper air conditioning in the concourse near the Gateway IV and Gateway III buildings. The main unit that supplied HVAC to the concourse level in the area of the Gateway III garage was abandoned by the Concourse Association in 2006. The Concourse Association instead replaced the main unit with underperforming split coil air conditioning units inside the Concourse Association's individual tenants' spaces. As a result, during the summer, the concourse area adjacent to and between the Gateway IV and Gateway III buildings gets uncomfortably hot. Lichter Gateway has complained numerous times to the Concourse Association, which has acknowledged that the situation should be addressed but has failed to perform the necessary repairs.

14. All of the foregoing examples are in stark contrast to the apparent regular maintenance and repairs that are evident in the concourse adjacent to the Gateway I building. From 2006 through 2012, two of the three concourse sky bridges, which are part of the property that are either owned or managed by Advance Realty (which, in turn, manages the Concourse Association) and run from the Hilton Hotel to Penn Station and over McCarter Highway, have had in excess of $100,000 in upgrades, including new roof surfaces, paint, and new carpet. In contrast, the sky bridge over the Gateway III and Gateway IV has been neglected and permitted to fall into general disrepair.

15. In July 2010, the Concourse Association purchased lighting samples to replace existing lighting along the concourse from the Gateway III garage to the 100 Mulberry Street escalators and agreed to replace the ceiling mounted light fixtures from the border of the Gateway II property line to the 100

Mulberry Street escalators. However, the only lights that have been replaced are those that were on the concourse adjacent to the Gateway I building. The lights in proximity to Gateway IV were not replaced, and the Association has failed to follow through on the installation.

16. As a result of these deficiencies, we were instructed by Lichter Gateway in 2012 to withhold payment of Concourse Association dues until the Concourse Association performed the necessary repairs, except for drawing a check in the amount of $69,400 that was issued to the Concourse Association on December 9, 2013.

17. On behalf of Lichter Gateway, Heritage has maintained and accrued funds in a management account that are available to pay the Concourse Association if and when it resolves the necessary repairs.

**Wells Fargo's Servicer's Control of Gateway IV's Cash Flow; Awareness of Gateway IV Finances**

18. Wells Fargo's master servicer, Berkadia Commercial Mortgage LLC ("Berkadia"), exercises direct control of cash flow payments and distributions from the rental income generated by Gateway IV. C-III Asset Management LLC ("C-III") is the special servicer for Wells Fargo.

19. Each month, Gateway IV's tenants pay rent into a lockbox which is controlled and accessed by Berkadia. In turn, Berkadia "sweeps" the balance due on mortgage payments before distributions are made for operating expenses. Wells Fargo's servicer effectively has control over the order and

Case 2:17-cv-02036-KM-MAH Document 13-4 Filed 06/19/17 Page 8 of 9 PageID: 799

structure of these distributions, referred to as the "waterfall," and has changed them when it deems necessary.

20. Berkadia also receives from Lichter Gateway regular financial reporting. Lichter Gateway's financial submissions provide transparency into its management of Gateway IV. Expenses need to be accrued even if they are subject of a dispute. Throughout its relationship with Wells Fargo's servicer, Lichter Gateway has provided these documents in good faith, and actively communicated regarding budgetary issues.

21. Invariably, the amounts Berkadia disbursed bore no relationship to the estimated expense items submitted. Berkadia also frequently held back amounts for supposed "reserves" that were either in excess of the amounts provided for in the Loan Documents or were not provided for at all. Berkadia's disbursements were never accompanied by any sort of allocation as to what expenses to pay and the amount. In fact, the disbursements were frequently less than the amount of expenses to be paid, leaving it to real-time operational decisions as to how to allocate money for expenses. Berkadia also never asked for later reconciliation of actual expenses or receipts at any time, including the present day.

**<u>Heritage's Continued Management of Gateway IV</u>**

22. Heritage continues to manage Gateway IV on behalf of Lichter Gateway. Earlier this year we repaired a cooling tower and water pump in Gateway IV. As part of this project, we conferred with C-III regarding the repairs and C-III approved disbursements to pay for these improvements. We obtained

Case 2:17-cv-02036-KM-MAH Document 19-4 Filed 06/19/17 Page 9 of 9 PageID: 860

two project proposals and oversaw completion of the work. We look forward to continuing to work with Wells Fargo's servicers in continuing serve Gateway IV's tenants.

I declare under penalty of perjury that the foregoing is true and correct. Executed on: June 19, 2017.

By: ______________________

Steven Greenberg

# EXHIBIT 1

# TO

# DECLARATION OF STEVEN GREENBERG

Case 2:17-cv-02036-KM-MAH Document 19-5 Filed 06/19/17 Page 2 of 4 PageID: 802







Case 2:17-cv-02036-KM-MAH Document 19-6 Filed 06/19/17 Page 1 of 18 PageID: 805

# EXHIBIT 2

# TO

# DECLARATION OF STEVEN GREENBERG











Case 2:17-cv-02036-KM-MAH Document 19-6 Filed 06/19/17 Page 7 of 18 PageID: 811







Case 2:17-cv-02036-KM-MAH Document 19-6 Filed 06/19/17 Page 19 of 18 PageID: 814











Case 2:17-cv-02036-KM-MAH Document 19-6 Filed 06/19/17 Page 15 of 18 PageID: 819







Case 2:17-cv-02036-KM-MAH Document 19-6 Filed 06/19/17 Page 18 of 18 PageID: 822



# EXHIBIT 3

# TO

# DECLARATION OF

# STEVEN GREENBERG

Case 2:17-cv-02036-KM-MAH Document 19-7 Filed 06/19/17 Page 2 of 9 PageID: 824












100





# EXHIBIT 4

# TO

# DECLARATION OF

# STEVEN GREENBERG





# EXHIBIT 5

# TO

# DECLARATION OF

# STEVEN GREENBERG

Case 2:17-cv-02036-KM-MAH Document 19-9 Filed 06/19/17 Page 2 of 7 PageID: 836







Case 2:17-cv-02036-KM-MAH Document 19-9 Filed 06/19/17 Page 5 of 7 PageID: 835





