**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WELLS FARGO BANK, N.A., AS TRUSTEE FOR MORGAN STANLEY CAPITAL I INC., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-IQ12,<br><br>Plaintiff,<br><br>-against-<br><br>LICHTER GATEWAY IV LLC, CLAIRE LICHTER, individually and in her capacity as Executrix of the ESTATE OF ALFRED LICHTER, JOSEPH SCHWARTZ, SUZETTE SCHWARTZ, THE ALFRED LICHTER 2000 FAMILY TRUST,<br><br>Defendants. | Civil Action No. 2:17-cv-02036-KM-MAH |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

Vivian M. Arias
John M. Doherty
THOMPSON & KNIGHT LLP
*Attorneys for Plaintiff*
900 Third Avenue, 20th Floor
New York, New York 10022
(212) 751-3251

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT....................................................................................1

STATEMENT OF FACTS ....................................................................................2

A. The Loan and Loan Documents....................................................................2

B. Borrower's Maturity Default ........................................................................3

C. Defendants' Recourse Liability ....................................................................4

LEGAL ARGUMENT ....................................................................................6

A. Standard for Summary Judgment..................................................................6

B. This Court Should Grant Plaintiff's Motion for Summary Judgment on Counts I, II, and III Because Defendants Do Not Challenge Any Issue of Material Fact Regarding Plaintiff's Entitlement to Foreclosure of the Mortgage .........................7

C. The Court Should Strike Defendants' Affirmative Defenses ...............................10

D. The Court Should Grant Summary Judgment on Counts V and VI for Breaches of the Note and Guaranty, Because Full Recourse Liability Has Been Triggered ....11

E. The Court Should Enter Judgment Against Defendants.......................................20

CONCLUSION....................................................................................21

## TABLE OF AUTHORITIES

### Cases

*A.D.L. v. Cinnaminson Twp. Bd. of Educ.*,
975 F. Supp. 2d 459 (D.N.J. 2013) ..... 14

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..... 6, 7

*Bank of New York Mellon v. Walch*,
2017 WL 1734031 (D.N.J. May 3, 2017) ..... 7, 11

*Barmag Barter Maschinenfabrik AG v. Murata Machinery, Ltd.*,
731 F.2d 831 (Fed. Cir. 1984) ..... 6, 9

*Business Loan Ctr., L.L.C. v. Nischal*,
331 F. Supp. 2d 301 (D.N.J. 2004) ..... 7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ..... 6, 10

*Conoshenti v. Public Service Elec. & Gas.*,
364 F.3d 135 (3d. Cir. 2004) ..... 10

*CP III Rincon Towers, Inc. v. Cohen*,
13 F. Supp. 3d 307 (S.D.N.Y. 2014) ..... 17, 18

*CSFB 2001-CP-4 Princeton Park Corporate Center, LLC v. SB Rental I, LLC*,
410 N.J. Super. 114 (N.J. App. Div. 2009) ..... 11, 19, 20

*El v. Southeastern Pennsylvania Transportation Authority*,
479 F.3d 232 (3d Cir. 2007) ..... 10

*First Nationwide Bank*,
223 A.D.2d at 619 N.Y.S.2d 418 ..... 19

*Fraize v. Ginnie Mae*,
2016 WL 958392 (D.N.J. Mar. 14, 2016) ..... 8

*Ginsberg v. Bistricer*,
2007 WL 987162 (App. Div. Apr. 4, 2007) ..... 14

*Great Falls Bank v. Pardo*,
263 N.J. Super. 388 (Ch. Div. 1993) ..... 8

*Homann v. Torchinsky*,
296 N.J. Super. 326 (App. Div. 1997) ..... 14

*Ioselev v. Schilling*,
2010 WL 1838367 (D.N.J. May 4, 2010) ........................................ 7

*Janak Corp. v. Shree Hari Harshketu Corp.*,
2013 WL 1844740 (App. Div. May 3, 2013) ........................................ 14

*JLM Fin. Investments 4, LLC v. Aktipis*,
2013 WL 2434607 (N.D. Ill. June 3, 2013) ........................................ 16, 17, 18

*Prof'l Buyer's Guild, LLC v. Ace Fire Underwriter Insurance Co.*,
2007 WL 3227183 (D.N.J. Oct. 30, 2007) ........................................ 9

*Siljee v. Atl. Stewardship Bank*,
2016 WL 2770806 (D.N.J. May 12, 2016) ........................................ 8

*Spiotta v. William H. Wilson, Inc.*,
179 A.2d 49 (N.J. Super. Ct. App. Div. 1962) ........................................ 8

*Thomas v. Jersey Mortg. Co.*,
2016 WL 4705449 (D.N.J. Sept. 8, 2016) ........................................ 8

*Thorpe v. Floremoore Corp.*,
89 A.2d 275 (N.J. Super. Ct. App. Div. 1952) ........................................ 7

*Twp. of White v. Castle Ridge Dev. Corp.*,
419 N.J. Super. 68 (App. Div. 2011) ........................................ 14

*United States v. Considine*,
2008 WL 4723030 (D.N.J. Oct. 24, 2008) ........................................ 11

*United States Bank National Association v. Thomas*,
2010 WL 1029872 (App. Div. 2010) ........................................ 10

*United States Small Business Admin. v. Herbst*,
2011 WL 3847197 (D.N.J. Aug. 24, 2011) ........................................ 10

*Wells Fargo Bank, N.A. v. Bertea*,
2016 WL 1182707 (D.N.J. Mar. 28, 2016) ........................................ 7, 8, 11

**RULES AND REGULATIONS**

Fed. R. Civ. P. 56 ........................................ 6, 9

Fed. R. Civ. P. 56(e) ........................................ 11

Plaintiff[1] submits this Memorandum of Law in support of its Motion for Summary Judgment (the "Motion") against defendants Lichter Gateway IV LLC ("Lichter Gateway" or "Borrower"), Claire Lichter ("Claire"), individually and in her capacity as Executrix of the Estate of Alfred Lichter, Joseph Schwartz ("Joseph"), Suzette Schwartz ("Suzette"), The Alfred Lichter 2000 Family Trust ("The Lichter Trust," and together with Borrower, Claire, Joseph, and Suzette, the "Defendants").

## PRELIMINARY STATEMENT

The material facts of this case are straight-forward and uncontested. There is no genuine dispute that Plaintiff is entitled to a judgment of foreclosure because it is undisputed that Plaintiff is the owner and holder of the Note[2] and Mortgage, that Borrower defaulted thereunder by failing to repay the entire principal balance on the Maturity Date on November 1, 2016, and that the Loan Documents permit Plaintiff to foreclose the Mortgage upon such default. None of Defendants' affirmative defenses are supported by any facts and do not overcome Plaintiff's entitlement to summary judgment on its claim for foreclosure of the mortgage.

Similarly, the facts supporting Plaintiff's claims for a deficiency judgment based upon breaches of the Note and Guaranty are undisputed and Plaintiff respectfully requests that the Court determine that, as a matter of law, the Loan is recourse as a result of the filing of the Concourse Liens. Although the Loan is generally a non-recourse obligation, the Loan Documents contain a

---

[1] On June 14, 2018, the parties filed a Stipulation and Proposed Consent Order substituting Four Gateway Center Note Owner LLC ("Noteholder") into this action as the Plaintiff, in the place and stead of Wells Fargo Bank, N.A., as Trustee For Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2006-IQ12 ("Wells Fargo"), which is pending signature by the Court. For purposes of this Motion, Noteholder, Wells Fargo, and their predecessors-in-interest, as appropriate, are collectively referred to herein as "Plaintiff."

[2] All undefined terms have the same meaning and definition as set forth in the Statement of Material Facts Not in Dispute submitted in connection with this Motion.

carve-out clause providing that the debt becomes fully recourse if certain enumerated "recourse" events occur, triggering "springing" recourse liability. Specifically, the Loan becomes fully recourse to the Borrower and Guarantor in the event that, among other things, "Borrower fails to obtain Lender's prior consent to any subordinate financing or other voluntary Lien encumbering the Property."

It is undisputed that Plaintiff did not give prior consent to the filing of three separate Concourse Liens that were filed during the period of time between July 2013 and March 2016, and remained as encumbrances on the Property until approximately November 2017, following Borrower's settlement of a litigation commenced by the Concourse Association. The Concourse Liens were filed as a direct result of Borrower's voluntary actions and strategic decisions to withhold payment of the Concourse Assessments, in violation of the Loan Documents and against the instructions of Plaintiff, in order to gain leverage in negotiations Borrower was having with the Concourse Association. Thus, the Court should find that the Concourse Liens were "voluntary Liens" within the meaning of the Loan Documents, triggering recourse liability against Borrower and Guarantors.

## <u>STATEMENT OF FACTS</u>

### A. <u>The Loan and Loan Documents</u>

Noteholder is the current holder of the $61,000,000.00 loan at issue in this commercial foreclosure action (the "Loan") by virtue of the assignment of the Loan by LaSalle Bank National Association ("Original Lender") to Wells Fargo Bank, N.A., as Trustee For Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2006-IQ12 ("Wells Fargo"), and subsequently from Wells Fargo to Four Gateway Center Note Owner LLC ("Noteholder"). *See* Plaintiff's Statement of Material Facts Not in Dispute (the "Facts"), at ¶ 1. Borrower is the owner of

the commercial property, known as Gateway IV, located at 100 Mulberry Street, New Jersey 07102 (the "Mortgaged Premises"). *Id.*, at ¶ 17. The Mortgaged Premises was pledged as collateral for a $61,000,000.00 promissory note dated October 24, 2006 (the "Note") that was assumed by the Borrower on January 3, 2011. *Id.*, at ¶¶ 7, 17. In connection with Borrower's assumption of the Note, Defendants Alfred Lichter ("Alfred"), Claire Lichter ("Claire"), Joseph Schwartz ("Joseph"), Suzette Schwartz ("Suzette") and The Alfred Lichter 2000 Family Trust ("Lichter Trust," and together with Alfred, Claire, Joseph, and Suzette, collectively, the "Guarantor") executed a Guaranty, dated January 3, 2011, for the benefit of the Plaintiff in order to secure the transfer and assumption of the Note. *Id.*, at ¶ 19.

**B. Borrower's Maturity Default**

Borrower is in default of its obligations to Plaintiff under the Note and Mortgage based on, among other things, Borrower's failure to pay all amounts to Plaintiff required under the Loan Documents on November 1, 2016 (the "Maturity Date"). *Id.*, at ¶ 27. This failure constitutes an Event of Default as defined under the Loan Documents. *Id.*, at ¶ 28.

Accordingly, Plaintiff declared the Loan in default in accordance with the terms of the Loan Documents by that certain Notice of Maturity Default and Demand for Payment letter sent to Borrower and Guarantor on January 4, 2017 (the "Notice of Maturity Default"). *Id.*, at ¶ 29. Despite demand under the Notice of Maturity Default, Borrower has not cured such default. *Id.*, at ¶ 30.

Pursuant to the Notice of Maturity Default, Plaintiff demanded that Borrower pay all sums due under the Loan Documents (collectively, the "Indebtedness"). *Id.*, at ¶ 31. To date, Borrower has failed to pay the Indebtedness due under the Loan Documents, and Borrower remains in default. *Id.*, at ¶ 32.

As of June 15, 2018, there is due, owing, and payable to Plaintiff a total of $60,266,874.78 consisting of: (i) $56,166,843.00 in principal; (ii) $2,389,774.35 accrued and unpaid interest at the contract rate; (iii) $4,632,445.26 accrued and unpaid interest at the default rate; and (iv) $417.00 in administrative fees; less (v) $2,922,604.83 in escrows and reserves. *Id.*, at ¶ 61.

**C. <u>Defendants' Recourse Liability</u>**

The Mortgaged Premises ("Gateway IV") shares a concourse and walkways with other buildings in the Gateway Center. *Id.*, at ¶¶ 39-40. To facilitate the maintenance of such common areas, the owners of the various buildings in the Gateway Center (including Borrower, who owns Gateway IV) entered into an Amended and Restated Grant and Agreement, dated as of December 21, 1999, and recorded with the Clerk's Office on December 27, 1999 at Deed Book 5664, Page 680 (the "Concourse Agreement"), which established the Concourse Association. *Id.*, at ¶ 39. Pursuant to the Concourse Agreement, the Concourse Association is responsible for maintaining the common areas, and charges assessments to the owners, including Borrower, for such maintenance costs. *Id.*, at ¶ 40.

Beginning in December 2012, Borrower voluntarily ceased to pay assessments due and owing to the Concourse Association in order to obtain a tactical advantage in its negotiations with the Concourse Association over repairs Borrower claimed should be made to certain common areas of the Gateway Center. *Id.*, at ¶ 43.

Borrower's failure to pay these assessments resulted in three separate liens being recorded against the Mortgaged Premises. *Id.*, at ¶ 50. The liens (the "Concourse Liens") recorded by the Concourse Association are described as follows:

a. Notice of Assessment Lien from Concourse Association against the Mortgaged Premises for a lien in the amount of $103,510.56, recorded on July 19, 2013 in the Clerk's Office at Book 12446, Page 6425 as Instrument No. 13064539.

b. Notice of Assessment Lien from Concourse Association against the Mortgaged Premises for a lien in the amount of $262,152.87, recorded on June 10, 2015 in the Clerk's Office at Book 12558, Page 7040 as Instrument No. 15044326.

c. Notice of Assessment Lien from Concourse Association against the Mortgaged Premises for a lien in the amount of $340,191.32, recorded on March 16, 2016 in the Clerk's Office as Instrument No. 2016023085.

*Id.*, at ¶ 50.

The Loan Documents require Borrower to pay the Concourse Assessments and do not permit Concourse Liens to be filed against the Property. *Id.*, at ¶¶ 44-45. At no time before or after Borrower withheld payment of the Concourse Assessments, did Borrower obtain the prior consent of Noteholder or its predecessors-in-interest to withhold such payments. *Id.*, at ¶ 51. At no time before or after the Concourse Liens were filed, did Borrower obtain the prior consent of Noteholder or its predecessors-in-interest to the Concourse Liens. *Id.*, at ¶ 52. During the time Borrower was not paying the Concourse Assessments, Borrower had funds available to pay the Concourse Assessments. *Id.*, at ¶ 48. During the time Borrower was not paying the Concourse Assessments, Borrower submitted financial statements to Plaintiff showing the Concourse Assessments as budgeted costs and expenses associated with the Mortgaged Premises that the Borrower intended to pay. *Id.*, at ¶ 49.

Upon learning that the Concourse Liens were filed, Plaintiff repeatedly requested that Borrower remove the Concourse Liens. *Id.*, at ¶ 53. Borrower represented to Plaintiff that it would cause the Concourse Liens to be removed. *Id.*, at ¶ 54. Borrower knew that its strategy of not paying the Concourse Assessments it owed would result in the Concourse Liens, and knew that the Concourse Liens were a violation of the Loan Documents. *Id.*, at ¶ 55. Despite having the funds available to remove the Concourse Liens and its representations to Noteholder's predecessors-in-interest that it would do so, Borrower permitted the Concourse Liens to be filed and remain as encumbrances on the Mortgaged Premises. *Id.*, at ¶ 56.

After the Concourse Liens were filed, Borrower did not contest the filing of the Concourse Liens or dispute that the amounts owing to the Concourse Association were due. *Id.*, at ¶¶41-46. Borrower's own operating reports indicated that the Concourse Assessments were due and would be paid. *Id.* at ¶49. Borrower took no steps to cause the Concourse Liens to be removed from the Property. *Id.* at ¶¶46-56.

## LEGAL ARGUMENT

Plaintiff is entitled to summary judgment as a matter of law against Defendants on its claim for mortgage foreclosure because there are no genuine issues of material fact regarding Plaintiff's right to foreclose its Mortgage against the Mortgaged Premises and Borrower is in default of its obligations under the Note and Mortgage. Plaintiff is also entitled to summary judgment against Defendants on its claim for a deficiency, because the filing of the Concourse Liens triggered recourse liability pursuant to the Note and Guaranty.

### A. Standard for Summary Judgment

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The Court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Under Fed. R. Civ. P. 56, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 317. To defeat a motion for summary judgment, the non-movant must then set forth specific facts showing that there is a genuine issue for trial. "Mere denials or conclusory statements" by the party opposing summary judgment are insufficient to defeat summary judgment. *Barmag Barter Maschinenfabrik AG v. Murata*

*Machinery, Ltd*., 731 F.2d 831, 839 (Fed. Cir. 1984). Further, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

### B. This Court Should Grant Plaintiff's Motion for Summary Judgment on Counts I, II, and III Because Defendants Do Not Challenge Any Issue of Material Fact Regarding Plaintiff's Entitlement to Foreclosure of the Mortgage

Plaintiff is entitled to a judgment of foreclosure as a matter of law because Defendants admit all of the essential elements of Plaintiff's mortgage foreclosure claim.

In this District, Courts determining motions for summary judgment for foreclosure generally apply the laws of the state where the property is located. *See Bank of New York Mellon v. Walch*, CV 15-724 (MLC), 2017 WL 1734031, at *3 (D.N.J. May 3, 2017) (*citing Business Loan Ctr., L.L.C. v. Nischal*, 331 F. Supp. 2d 301, 305–06 (D.N.J. 2004)) (applying New Jersey law when the property was located in New Jersey); *see also Ioselev v. Schilling*, No. 09-6039, 2010 U.S. Dist. LEXIS 44425, at *10, 2010 WL 1838367 (D.N.J. May 4, 2010) (applying Florida law because the property was located in Florida). There is no dispute that the property at issue is located in New Jersey. *See* Answer (Exhibit 3 to the Declaration of Vivian M. Arias (the "Arias Decl.")), ¶ 3. Thus, New Jersey law applies.

Under New Jersey law, "[a] mortgagee establishes a prima facie right to foreclosure when there is proof of execution, recording, and non-payment of the mortgage." *Wells Fargo Bank, N.A. v. Bertea*, No. 13-7232, 2016 U.S. Dist. LEXIS 40191, at *7, 2016 WL 1182707 (D.N.J. Mar. 28, 2016) (citing *Thorpe v. Floremoore Corp.*, 89 A.2d 275, 276 (N.J. Super. Ct. App. Div. 1952)). The "essential elements" necessary for a foreclosure judgment to be granted in New Jersey are "the validity of the note and mortgage; the alleged default; and the Bank's right to foreclose." *Thomas v.*

*Jersey Mortg. Co.*, No. 13-648, 2016 U.S. Dist. LEXIS 121624, at *19, 2016 WL 4705449 (D.N.J. Sept. 8, 2016) (citing *Great Falls Bank v. Pardo*, 622 A.2d 1353, 1356 (N.J. Super. Ct. Ch. Div. 1993), aff'd o.b., 642 A.2d 1037, 1039 (N.J. Super. Ct. App. Div. 1994)); *see also Bertea*, 2016 U.S. Dist. LEXIS 40191, at *7, 2016 WL 1182707 (noting these three elements are the "only material issues" in a foreclosure proceeding). A lender's right to foreclose includes its standing by assignment. *Siljee v. Atl. Stewardship Bank*, No. 15-1762, 2016 U.S. Dist. LEXIS 63257, at *10–11, 2016 WL 2770806 (D.N.J. May 12, 2016); *Fraize v. Ginnie Mae*, No. 14-7152, 2016 U.S. Dist. LEXIS 32489, at *12, 2016 WL 958392 (D.N.J. Mar. 14, 2016). A mortgagor opposing summary judgment in a foreclosure proceeding "has a duty to present facts to controvert a mortgagee's prima facie case." *Bertea*, 2016 U.S. Dist. LEXIS 40191, at *7, 2016 WL 1182707 (citing *Spiotta v. William H. Wilson, Inc.*, 179 A.2d 49, 54 (N.J. Super. Ct. App. Div. 1962), certif. denied, 181 A.2d 12 (N.J. 1962)).

In Defendants' Answer, Defendants admit the essential elements of a mortgage foreclosure action. First, Defendants do not dispute the validity of the Loan Documents, including that Borrower assumed the Loan and the Original Borrower's obligations under the Loan Documents, including the Note, Mortgage, and Assignment of Leases, pursuant to the Assumption Agreement. *See* Answer, ¶¶ 10-16, 18-19, 22-25 (admitting that the Loan Documents "speak for themselves"). Defendants also admit that, Defendants executed the Assumption Agreement and that Borrower assumed the Loan. *See* Answer, ¶¶ 26-30.

Nor do Defendants dispute that Borrower defaulted under the Note and Mortgage by its failure to make its November 1, 2016 payment on the Maturity Date. *See* Facts, ¶ 27. Further, Defendants admit that they have not paid the Indebtedness due under the Loan Documents and thus remain in default. *See* Facts, ¶ 32.

Moreover, Section 7.1 of the Mortgage clearly provides that Plaintiff has a right to foreclose in light of Borrower's default:

> Upon the occurrence and during the continuance of any Event of Default (as defined in the Loan Agreement), Borrower agrees that lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, but not limited to . . . institute proceedings, judicial or otherwise, for the complete foreclosure of this Security Instrument under any applicable provision of law, in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner, and in no event shall Borrower be entitled to any credit by reason of the payment of taxes thereon.

*See* Facts, ¶ 7; Mortgage, § 7.1(b).

In its Answer and Responses to Plaintiff's Requests for Admission, Defendants repeatedly state that Plaintiff's factual allegations "calls for a legal conclusion" and that the documents "speak for themselves." *See* Answer, ¶¶ 8-19, 21-51, 62-71, 73-74, 76-80, 82-85 and 86; Admissions, ¶¶ 1-11, 16-17, 29-30, 32, 36. These responses do not defeat summary judgment. In arguing against a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." *Prof'l Buyer's Guild, LLC v. Ace Fire Underwriter Ins. Co.*, No. CIV. 06-2127 (GEB), 2007 WL 3227183, at *2 (D.N.J. Oct. 30, 2007) (referring to Fed. R. Civ. P. 56); *see also Barmag*, 731 F.2d at 839 (Fed. Cir. 1984) ("Mere denials or conclusory statements are insufficient" to defeat summary judgment.). Accordingly, Plaintiff is entitled to judgment as a matter of law.

**C. <u>The Court Should Strike Defendants' Affirmative Defenses</u>**

None of Defendants' sixteen (16) conclusory and unsupported affirmative defenses[3] impair or implicate the *prima facie* elements of a mortgage foreclosure action: that the Mortgage and Loan Documents are valid; the Loan is in default; and the Plaintiff has the contractual right to foreclose in light of such Event of Default. *U.S. Bank National Association v. Thomas*, 2010 WL 1029872, *2 (N.J. Super. App. Div. 2010).

Where, as here, a moving party demonstrates that no genuine issue exists as to any material fact supporting an affirmative defense, the defense may be resolved as a matter of law pursuant to Federal Rule of Civil Procedure 56. *See, e.g.*, *El v. Southeastern Pa. Transportation Auth.*, 479 F.3d 232, 238 (3d Cir. 2007). If summary judgment is sought on an issue for which the non-moving party bears the burden of proof, such as a defendant's affirmative defense, the movant may establish entitlement to relief by showing that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 322; *see also Conoshenti v. Public Serv. Elec. & Gas.*, 364 F.3d 135, 145-46 (3d. Cir. 2004).

Here, Defendants have not alleged any facts or presented any evidence in support of their boilerplate affirmative defenses. *See United States Small Business Admin. v. Herbst*, 2011 U.S. Dist. LEXIS 97059 at *14 & nn. 3 & 4, 2011 WL 3847197 (D.N.J. Aug. 24, 2011). Thus, there is no genuine issue of material fact that rebuts the Plaintiff's prima facie right to foreclosure. *See*

---

[3] Defendants' Affirmative Defenses are as follows: (1) unclean hands; (2) that the Lichter Defendants conducted themselves in a commercially reasonable manner in compliance with applicable laws; (3) estoppel, waiver, and laches; (4) failure to state a claim; (5) that no duty existed on the part of the Lichter Defendants; (6) lack of privity; (7) parol evidence and the doctrine of integration; (8) statute of limitations; (9) Plaintiff suffered no damages; (10) to the extent Plaintiff suffered damages, those damages were not proximately caused by the acts or omissions of the Lichter Defendants; (11) Plaintiff's claims are frivolous; (12) Plaintiff's claims are moot; (13) Plaintiff's actions constituted a full release; (14) Plaintiff failed and neglected to mitigate any

*Bertea*, 2016 U.S. Dist. LEXIS 40191, at *7, 2016 WL 1182707; *Bank of New York Mellon v Walch*, CV 15-724 (MLC), 2017 WL 1734031, at *5 (D.N.J. May 3, 2017).

### D. **The Court Should Grant Summary Judgment on Counts V and VI for Breaches of the Note and Guaranty, Because Full Recourse Liability Has Been Triggered**

The Guaranty is what is known in the industry as a "bad boy," "springing recourse," or "carve-out" guaranty. *See* Facts, ¶ 34. The Loan is generally a non-recourse obligation, but the Loan Documents contain a carve-out clause providing that the debt becomes fully recourse if certain enumerated "recourse" events occur, triggering "springing" recourse liability. *See* Facts, ¶ 35. Under New Jersey law, "bad boy" guaranties will be enforced where the plaintiff establishes that (1) the recourse trigger event has occurred, (2) plaintiff made written demand for payment, and (3) payment has not been made. *See CSFB 2001-CP-4 Princeton Park Corporate Center, LLC v. SB Rental I, LLC*, 410 N.J. Super. 114 (N.J. App. Div. 2009).

Similarly, the Note, at Section 8, incorporates the provisions of Section 11.22 of the Loan Agreement, which contain identical carve-out clauses as the Guaranty, and provide that the Loan becomes fully recourse to Borrower to the same extent that it becomes fully recourse to Guarantor. A plaintiff demonstrates its entitlement to summary judgment on a promissory note by introducing copies of the negotiable instrument and other relevant documents. *See United States v. Considine*, 2008 WL 4723030, at *2 (D.N.J. Oct. 24, 2008) (finding that the plaintiff had satisfied its burden under Fed. Civ. P. 56(e) in action to collect defaulted student loans by providing copies of the defendant's signed promissory notes). Defendants do not dispute that Plaintiff has introduced true copies of the Loan Documents, made written demand, or that payment has not been made. *See* Facts, ¶¶ 29, 30.

---

damages so as to reduce and/or diminish its claim; (15) Plaintiff did not reasonably rely on any alleged misrepresentations or nondisclosures of material facts; and (16) set-off.

Defendants also admit, or fail to genuinely dispute, that:

- Borrower is a party to that certain Amended and Restated Grant and Agreement, dated as of December 21, 1999, and recorded with the Clerk's Office on December 27, 1999 at Deed Book 5664, Page 680 (the "Concourse Agreement"). *See* Facts, ¶ 39.

- Pursuant to the Concourse Agreement, Borrower is obligated to pay assessments to the Concourse Association (the "Concourse Assessments"). *See* Facts, ¶ 40.

- Beginning in December 2012, Borrower ceased paying the Concourse Assessments. *See* Facts, ¶ 43.

- Borrower had no legitimate basis to dispute that the Concourse Assessments it did not pay were due and owing to the Concourse Association. *See* Facts, ¶ 46.

- Borrower purposefully refused to pay the Concourse Assessments in order to obtain a tactical advantage in its negotiations with the Concourse Association. *See* Facts, ¶ 47.

- During the time Borrower was not paying the Concourse Assessments, Borrower had funds available to pay the Concourse Assessments. *See* Facts, ¶ 48.

- During the time that Borrower was not paying the Concourse Assessments, Borrower knew that if Borrower continued to withhold payment of the Concourse Assessments, the Concourse Association would file Concourse Liens. *See* Facts, ¶ 42.

- The following liens (the "Concourse Liens") were filed against the Mortgaged Premises:

    - Notice of Assessment Lien in the amount of $103,510.56, recorded on July 19, 2013 in the Clerk's Office at Book 12446, Page 6425 as Instrument No. 13064539. *See* Facts, ¶ 50(a).

    - Notice of Assessment Lien in the amount of $262,152.87, recorded on June 10, 2015 in the Clerk's Office at Book 12558, Page 7040 as Instrument No. 15044326. *See* Facts, ¶ 50(b).

    - Notice of Assessment Lien in the amount of $340,191.32, recorded on March 16, 2016 in the Clerk's Office as Instrument No. 2016023085. *See* Facts, ¶ 50(c).

- At no time before or after the Borrower withheld payment of the Concourse Assessments, did Borrower obtain the prior consent of Plaintiff or its predecessors-in-interest to withhold such payment. *See* Facts, ¶ 51.

- At no time before or after the Concourse Liens were filed, did Borrower obtain the

prior consent of Plaintiff or its predecessors-in-interest to the Concourse Liens. *See* Facts, ¶ 52.

- Upon learning that the first Concourse Lien was filed, Plaintiff requested that Borrower remove the Concourse Liens. *See* Facts, ¶ 53.
- Borrower represented to Plaintiff that it would cause the first Concourse Lien to be removed. *See* Facts, ¶ 54.
- Borrower failed to cause the first Concourse Lien to be removed. *See* Facts, ¶ 56.
- Borrower continued it strategy of non-payment of the Concourse Assessments throughout the period from 2013 to 2017. *See* Facts, ¶ 57.
- Borrower knew that the Concourse Liens were a violation of the Loan Documents. *See* Facts, ¶ 55.
- During the time Borrower was not paying the Concourse Assessments, Borrower submitted Property financial statements to Plaintiff showing the Concourse Assessments as costs and expenses associated with the Property that the Borrower was required to and intended to pay. *See* Facts, ¶ 49.
- Despite having the funds available to remove the Concourse Liens and its representations to Plaintiff's predecessors-in-interest that it would do so, Borrower permitted the Concourse Liens to be filed and remain as encumbrances on the Mortgaged Premises. *See* Facts, ¶ 56.
- After the Concourse Association commenced a state court litigation to enforce its Concourse Liens, Borrower and the Concourse Association reached a settlement pursuant to which Borrower made a significant payment and the Concourse Liens were removed. *See* Facts, ¶ 57.

Section 11.22 of the Loan Agreement (incorporated into the Note at Section 8) and Section 1.2 of the Guaranty set forth the "springing recourse events" that render the Loan fully recourse to Borrower and Guarantors, respectively. Specifically, the Loan becomes fully recourse to the Borrower and Guarantor in the event that, among other things, "Borrower fails to obtain Lender's prior consent to any subordinate financing or other voluntary Lien encumbering the Property." *See* Facts, ¶36; Loan Agreement, 11.22(B)(iii); Guaranty, Section 1.2(ii)(C). As discussed below, Borrower's actions have triggered springing recourse liability against Borrower and Guarantors because Borrower did not obtain prior consent for the Concourse Liens, which constitute "voluntary

Liens" in violation of Section 11.22(B)(iii) of the Loan Agreement and Section 1.2(ii)(C) of the Guaranty.

**1. Legal Standards for Contract Interpretation**

The interpretation of contract language is a question of law, which is suitable for a decision on a motion for summary judgment. *Janak Corp. v. Shree Hari Harshketu Corp.*, 2013 WL 1844740, at *5 (App. Div. May 3, 2013) (holding that the construction of the Guaranty and the loan documents presented a question of law). The polestar of contract construction is to discover the intention of the parties as revealed by the language used by them and to give effect to that intent. *Ginsberg v. Bistricer*, 2007 WL 987162, at *6 (App. Div. Apr. 4, 2007). In giving effect to the intent of the contracting parties, the terms of the contract must be given their plain and ordinary meaning. *See Twp. of White v. Castle Ridge Dev. Corp.*, 419 N.J. Super. 68, 75 (App. Div. 2011) (internal citation omitted). The court "should not torture the language of [a contract] to create ambiguity." *Id.*

New Jersey law is clear that contracts must be enforced as written, and it is not the Court's province to make a different contract, or a better contract, than that agreed to by the parties. *Homann v. Torchinsky*, 296 N.J. Super. 326, 334 (App. Div. 1997) ("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."). Moreover, a contract "should not be interpreted to render one of its terms meaningless." *A.D.L. v. Cinnaminson Twp. Bd. of Educ.*, 975 F. Supp. 2d 459, 466 (D.N.J. 2013) (applying New Jersey law). Accordingly, a contract "must be read as a whole, and with common sense." *Id.*

Merriam Webster Dictionary defines "voluntary" as "proceeding from the will or from one's own choice or consent or done by design or intention." Similarly, Black's Law Dictionary defines a

"voluntary lien" as "a lien created with the debtor's consent." Black's Law Dictionary (10th ed. 2014). Black's Law Dictionary defines an "involuntary lien" as a "lien arising without the debtor's consent." Black's Law Dictionary (10th ed. 2014).

**2. The Concourse Liens are Voluntary**

The Loan Agreement defines the term "Lien" as "any mortgage, deed of trust, lien, pledge, hypothecation, assignment, security interest, or other encumbrance, charge or transfer of, on or affecting the Property or any portion thereof of Borrower, or any interest therein, including, without limitation, any conditional sale or other title retention agreement, any financing lease having substantially the same economic effect as any of the foregoing, the filing of any financing statement, and mechanic's, materialmen's and other similar liens and encumbrances." *See* Facts, ¶ 45. Here, there is no dispute that the Concourse Liens fall within the meaning of "Lien" given that they were filed as "liens" on the Property. *See* Facts, ¶ 50.

There is also no dispute that Defendants voluntarily created the situation that lead to the filing of the Concourse Liens, knew that the Concourse Liens would be filed because of their voluntary actions, and took no steps to stop them from being filed or remove them once filed. Defendants acknowledge that Borrower was "required to pay the arrears" owing to the Concourse Association. *See* Facts, ¶ 46 (referencing Defendants' Correspondence bearing Bates No. Lichter002585). Indeed, Borrower was required to pay the Concourse Assessments pursuant to both the Concourse Agreement and the Loan Documents. *See* Facts, ¶¶40-41, 44. Nevertheless, Defendants intentionally and purposefully refused to pay the Concourse Assessments in order to gain "leverage" over the Concourse Association in a dispute over the maintenance of the common areas.

By email dated December 9, 2013, Borrower's representative admitted, "the Concourse Association would likely only agree to [remove the Concourse Liens] if we paid them in full, and then we would be left with all the maintenance shortfalls without any ***leverage*** to compel the Association to meet their maintenance obligations…. ***There is no problem from a cash flow perspective in discharging this lien and meeting the monthly obligations***. The problem is more ***strategic***, that the Association's failure to carry out the maintenance that it is obligated to do is denigrating our building, particularly now as we need to fight to retain existing tenants and attract new ones." *See* Facts, ¶ 54 (referencing Defendants' Correspondence bearing Bates No. Lichter000030) (emphasis added). In other words, Borrower made a tactical decision not to pay the amounts it owed to the Concourse Association.

At the time Defendants stopped paying the Concourse Assessments, they knew that doing so gave the Concourse Association the right to file the Concourse Liens, but nevertheless continued with their strategy. *See* Facts, ¶¶ 46, 57. Moreover, during this time, Borrower submitted financial statements to Plaintiff indicating that Borrower owed the Concourse Assessments, would be paying the Concourse Assessments, and indeed had the funds to do so. *See* Facts, ¶¶ 48-49.

After several months of non-payment, the first Concourse Lien was filed in July 2013. *See* Facts, ¶ 50(a). Upon learning of the existence of the first Concourse Lien, Plaintiff's representatives repeatedly requested that Borrower remove the first Concourse Lien. *See* Facts, ¶53. Borrower indicated to Plaintiff that it would resolve the situation, but failed to take any steps to do so. *See* Facts, ¶ 54. Borrower continued its non-payment strategy and ultimately, the second and third Concourse Liens were filed in June 2015 and March 2016. *See* Facts, ¶ 57.

Even after the second and third Concourse Liens were filed, Defendants did not take the steps necessary to remove the Concourse Liens and indeed did not take steps to demand that the

Concourse Association address its maintenance dispute other than to continue withholding payment. Specifically, Defendants did not pay the arrears, despite admittedly having more than enough cash to pay off and discharge the Concourse Liens, and acknowledging that they owed those amounts. Rather, Defendants permitted the Concourse Liens to be filed against the Property and remain there, despite numerous requests from Plaintiff that the Concourse Liens be removed.

The Third Circuit has not ruled on the meaning of "voluntary lien" in the context of "bad boy" guaranties securing commercial real estate loans. While courts in other circuits have interpreted loan documents with similar language, the facts of this case are markedly different. For example, the liens in *JLM Fin. Investments 4, LLC v. Aktipis*, 2013 WL 2434607 (N.D. Ill. June 3, 2013), were disputed mechanic's liens. In that case, the borrower, Springhill Gateway, "did not consent to the recording of the Mechanic's Liens against the Property. They arose as a result of actions taken by Springhill Gateway's creditors…. Once the liens arose, Springhill Gateway took steps to contest them." *See id.* at *3. Here, the Concourse Liens were effectively filed with Borrower's consent because they were filed due to the knowing and purposeful steps taken by Borrower, not due to actions taken by Borrower's creditors.

In *CP III Rincon Towers, Inc. v. Cohen*, 13 F. Supp. 3d 307, 315–16 (S.D.N.Y. 2014), *vacated and remanded*, 666 Fed Appx 46 (2d Cir. 2016), the trial court found that mechanic's liens, judgment liens, and an REOA lien imposed on the property were inherently involuntary within the meaning of New York law. Notably, this decision was ultimately reversed and remanded by the Second Circuit on other grounds. *See CP III Rincon Towers, Inc. v Cohen*, 666 Fed Appx 46, 51 (2d Cir 2016). In any event, the *CP III* court made its finding based on the facts that the loan documents did not require the lender's advance written consent to incur such debts and that the borrower took steps to remove or dispute the liens after they were filed. *Id.*

Here, on the other hand, Borrower neither challenged the fact that the Concourse Assessments were owed, nor disputed the Concourse Liens once they were filed. *See* Facts, ¶¶ 46-56. Indeed, Borrower's own income and expense reports for the Property indicated that the Concourse Assessments were due and owing and that they would be paid by Borrower. *See* Facts, ¶49. Similarly, Borrower acknowledged that it owed the Concourse Association arrears, but that it was not paying those arrears for a strategic purpose. *See* Facts, ¶¶47-48. This is distinguishable from the facts of *JLM Financial* and *CP III* where the borrowers had a legitimate dispute to the liens that were filed, and in fact did dispute such liens. Here, because Borrower admitted that the Concourse Assessments were due and did not dispute the Concourse Liens, Borrower effectively consented to the filing of the Concourse Liens.

Moreover, Borrower made representations to Plaintiff that Borrower was paying the Concourse Assessments, submitted financial statements indicating that Borrower was paying the Concourse Assessments, and represented to Plaintiff that Borrower would cause the Concourse Liens to be removed. *See* Facts, ¶¶ 49, 54. Despite these statements, Borrower did not pay the Concourse Assessments and did not remove the Concourse Liens. *See* Facts, ¶ 56. Nor did Defendants dispute or take any steps to contest the Concourse Liens, but rather, they continued to permit additional Concourse Liens to be filed against the Property with the intent that Defendants' actions would increase their leverage in their negotiations with the Concourse Association. *Id.*

Even if Defendants argue that the first Concourse Lien, filed in July 2013 was placed without Borrower's permission, Borrower continued withholding payment to the Concourse Association, continued its non-payment strategy, and permitted two additional Concourse Liens to be filed in June 2015 and March 2016, despite Plaintiff's objections and repeated requests to remove the liens. *See* Facts, ¶ 50.

Importantly, Borrower could have sought Plaintiff's prior consent to withhold payment of the Concourse Assessments, but never did so. Not only did Borrower fail to obtain Plaintiff's consent to Borrower's "strategy," but Plaintiff repeatedly made clear that Plaintiff did not consent to the Concourse Liens and that Plaintiff required that the Concourse Liens be removed. *See* Facts, ¶ 53.

As such, the Court should find that Borrower's actions were voluntary and that the resultant Concourse Liens fall within the meaning of "voluntary Liens" in the Loan Documents.

**3. Even though they were ultimately removed, New Jersey law enforces Guaranty where the recourse trigger event occurred.**

The fact that the Concourse Liens have been discharged does not obviate Defendants' liability for the breaches of the Loan Documents. New Jersey courts have rejected the argument of guarantors that the event triggering recourse liability has since been "cured," and has held guarantors liable even where the impermissible liens have since been discharged. *CSFB 2001-CP-4 Princeton Park Corp. Ctr., LLC v. SB Rental I, LLC*, 410 NJ Super 114, 123–24, 980 A.D.2d 1, 6–7 (N.J. Super. Ct. App. Div. 2009). Indeed, as the Court held in *SB Rental*:

> It matters not, as defendants argue, that they eventually cured the very breach that triggered their personal liability and that no harm accrued to plaintiff as a result thereof. In *First Nationwide Bank, supra*, a lender made a non-recourse loan to a real estate partnership that provided for full recourse liability upon the commencement of a voluntary bankruptcy proceeding that was not dismissed within 90 days. 223 A.D.2d at 619, 637 N.Y.S.2d 418. Nevertheless, the partnership filed a voluntary bankruptcy petition that was dismissed after the 90–day period had expired. *Ibid.* The court held that even though the default was "cured" in the sense that the bankruptcy was ultimately dismissed, the subsequent dismissal was ineffective to avoid recourse liability for the partnership and its partners. *Id.* at 620–21, 637 N.Y.S.2d 418.
>
> Similarly here, the fact that the subordinate financing was paid off well before defendants' ultimate default on payment of the principal loan does not alter the fact that defendants breached the very obligation identified by both parties as posing a special risk to plaintiff, and therefore requiring the covenant's special protection. By further encumbering the property, even if only temporarily, defendants' action had the potential to affect the viability

> and value of the collateral that secured the original loan. Indeed, it cannot be said with any certainty that the subordinate financing in this case was entirely unrelated to defendants' ultimate default on their mortgage payments. In any event, the fact that such potential may not have actualized does not diminish the breach of obligation nor vitiate its contracted-for consequences. Having freely and knowingly negotiated for the benefit of avoiding recourse liability generally, and agreeing to the burden of full recourse liability in certain specified circumstances, defendants may not now escape the consequences of their bargain.

*See id.*

Here, similarly, although the Concourse Liens have been discharged, Defendants actions of withholding payment from the Concourse Association, incurring significant debt for the strategic purpose of increasing their negotiating leverage with the Concourse Association, permitting the Concourse Liens to be filed, and taking no steps to have the Concourse Liens removed, created the very type of situation that Plaintiff sought to protect itself from with the recourse trigger events set forth in the Loan Documents, and likely caused a decrease in the value of the Property. Thus, just as the Court found in *SB Rental*, the Court should enforce Defendants' recourse liability regardless of the fact that the Concourse Liens have since been discharged of record.

**E. <u>The Court Should Enter Judgment Against Defendants</u>**

For the reasons set forth above, Plaintiff is entitled to summary judgment on the issue of liability of Defendants under the Loan Documents. In addition, Plaintiff submits with this motion a calculation of the amount due under the Loan documents, including the outstanding principal due, a computation of interest and default interest, and other fees and charges. As set forth in the Noteholder Declaration, the total amount owed as of June 15, 2018 is $60,266,874.78.

Pursuant to Section 4.1.13 of the Loan Agreement, in the event of, among other things, the foreclosure of the Mortgage, "Borrower shall be chargeable with and agrees to pay all costs incurred by Lender as a result thereof, including costs of collection and defense (including reasonable attorneys', experts', consultants' and witnesses' fees and disbursements) in connection therewith and

in connection with any appellate proceeding or post-judgment action involved therein, which shall be due and payable on demand, together with interest thereon from the date incurred by Lender at the Default Rate, and together with all required service or use taxes." *See also,* Loan Agreement at Section 11.13.

Similarly, pursuant to Section 1.8 of the Guaranty, "Guarantor shall, immediately upon demand by Lender, pay Lender all reasonable, out-of-pocket costs and expenses (including court costs and attorneys' fees) incurred by Lender in the enforcement hereof or the preservation of Lender's rights hereunder." *See* Facts, ¶ 60; Guaranty, at Section 1.8.

Accordingly, as there is no genuine issue of fact as to the amount due under the Loan Documents or Plaintiff's entitlement to recover these sums, the Court should enter judgment of foreclosure against Defendants in the form and amounts requested herein.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its motion for summary judgment and grant such other and further relief as is just and proper under the circumstances.

Respectfully submitted,

THOMPSON & KNIGHT LLP
*Attorneys for Plaintiff*
900 Third Avenue, 20th Floor
New York, New York 10022
(212) 751-3325

By: /s/ Vivian M. Arias
Vivian M. Arias

Dated: June 15, 2018