Vivian M. Arias
John M. Doherty
THOMPSON & KNIGHT LLP
*Attorneys for Plaintiff*
900 Third Avenue, 20th Floor
New York, New York 10022
(212) 751-3251

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WELLS FARGO BANK, N.A., AS TRUSTEE FOR MORGAN STANLEY CAPITAL I INC., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-IQ12,<br><br>Plaintiff,<br><br>-against-<br><br>LICHTER GATEWAY IV LLC, CLAIRE LICHTER, individually and in her capacity as Executrix of the ESTATE OF ALFRED LICHTER, JOSEPH SCHWARTZ, SUZETTE SCHWARTZ, THE ALFRED LICHTER 2000 FAMILY TRUST,<br><br>Defendants. | Civil Action No. 2:17-cv-02036-KM-MAH |

**RULE 56.1 STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Plaintiff,[1] by and through its attorneys, Thompson & Knight LLP, submits the following Statement of Material Facts Not in Dispute in Support of its Motion for Summary Judgment, dated June 15, 2018 (the "**Motion**"), in accordance with the Federal Rules of Civil Procedure, Rule 56.1 and the Local Civil Rules:

[1] On June 14, 2018, the parties filed a Stipulation and Proposed Consent Order substituting Four Gateway Center Note Owner LLC ("**Noteholder**") into this action as the Plaintiff, in the place and stead of Wells Fargo Bank, N.A., as Trustee For Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2006-IQ12 ("**Wells Fargo**"), which is pending signature by the Court. For purposes of this Motion, Noteholder, Wells Fargo, and their predecessors-in-interest, as appropriate, are collectively referred to herein as "**Plaintiff**."

1. On or about October 24, 2006, Heritage Gateway, LLC ("**Heritage**"), Marine One Associates III, LLC ("**Marine**"), Ridgewood 2000 Associates III, LLC ("**Ridgewood**"), JPG Real Estate III, LLC ("**JPG**"), and Ivy Gateway, LLC ("**Ivy**" and together with Heritage, Marine, Ridgewood and JPG, collectively, the "**Original Borrower**") executed that certain Promissory Note (the "**Note**") evidencing a loan made by LaSalle Bank National Association ("**Original Lender**") to Original Borrower in the principal amount of $61,000,000.00 (the "**Loan**"). *See* Complaint, ¶10 (attached as Exhibit 1 to the Declaration of Vivian Arias in Support of Motion for Summary Judgment (the "**Arias Decl.**")); Lichter Answer, ¶10 (attached as Exhibit 3 to the Arias Decl.); Defendants' Responses to Plaintiff's First Requests for Admission (the "**RFA Response**"), ¶¶1-2 (attached as Exhibit 4 to the Arias Decl.); Declaration of James Jordan in Support of Motion for Summary Judgment dated June 14, 2018 (the "**Noteholder Decl.**"), ¶3.

2. On or about October 24, 2006, Original Borrower entered into that certain Loan Agreement (the "**Loan Agreement**"), with Original Lender. *See* Complaint, ¶11, Ex. B; Lichter Answer, ¶11; RFA Response, ¶3; Noteholder Decl., ¶4.

3. The Note (which incorporates the terms of the Loan Agreement) provides for interest at a rate of 5.96% per annum (the "**Applicable Interest Rate**"), which is to be calculated on the basis of a 360 day year and paid for the actual number of days elapsed. *See* Complaint, ¶12, Ex. B; Lichter Answer, ¶12; RFA Response, ¶2; Noteholder Decl., ¶42.

4. The Note (which incorporates the terms of the Loan Agreement) provides for a late fee (the "**Late Fee**") to be paid by Borrower on any sum payable under the Note which is not received before the fifth (5th) calendar day after the date when due. The Late Fee of five percent (5%) is applied to the delinquent amount to defray the reasonable expenses incurred by Plaintiff

in handling and processing the delinquent payment and to compensate Plaintiff for the loss of the use of the delinquent payment. *See* Complaint, ¶13, Ex. B; Lichter Answer, ¶13; RFA Response, ¶2.

5. The Note (which incorporates the terms of the Loan Agreement) also provides for a default interest rate (the "**Default Rate**") that applies in the event of a default by Borrower. The Default Rate is five percent (5%) above the Applicable Interest Rate in effect at the time of the occurrence of the event of default. *See* Complaint, ¶14, Ex. B; Lichter Answer, ¶14; RFA Response, ¶2; Noteholder Decl., ¶45.

6. The maturity date under the Note occurred on November 1, 2016 (the "**Maturity Date**"). *See* Complaint, ¶15, Ex. B at § 2.3.2; Lichter Answer, ¶15; RFA Response, ¶2; Noteholder Decl., ¶5; Schwartz Decl., ¶16.

7. Repayment of the Note is secured by, among other things, that certain Mortgage and Security Agreement (the "**Mortgage**"), dated October 25, 2006, executed by Original Borrower, as mortgagor, to Original Lender, as mortgagee, encumbering the real property known as and located at 100 Mulberry Street, Newark, New Jersey 07102, also known as Block 151, Lot 121, as shown on the Official Tax Map of the City of Newark in the County of Essex, State of New Jersey (as more particularly described in the Mortgage) (the "**Property**" or "**Mortgaged Premises**"). *See* Complaint, ¶16, Ex. C; Lichter Answer, ¶16; RFA Response, ¶5; Noteholder Decl., ¶6.

8. The Mortgage, having been first duly acknowledged, was recorded on October 30, 2006 with the Essex County Register, New Jersey (the "**Clerk's Office**") at Book 11600, page 868 as Instrument No. 6158038. *See* Complaint, ¶16, Ex. C; Lichter Answer, ¶16; RFA Response, ¶6; Noteholder Decl., ¶6.

9. Repayment of the Note is further secured by, among other things, that certain Assignment of Leases and Rents (the "**Assignment of Leases**") dated as of October 25, 2006, executed by Original Borrower to Original Lender. *See* Complaint, ¶18, Ex. D; Lichter Answer, ¶18; RFA Response, ¶8; Noteholder Decl., ¶7.

10. The Assignment of Leases was recorded with the Clerk's Office on October 30, 2006 at Book 11600, page 888 in the Mortgage Book Index as Instrument No. 6158040. *See* Complaint, ¶18, Ex. D; Lichter Answer, ¶18; RFA Response, ¶9; Noteholder Decl., ¶7.

11. The Note, Loan Agreement, Mortgage, Assignment of Leases, together with all other documents and agreements evidencing and/or securing the Loan are collectively referred to as the "**Original Loan Documents**." *See* Complaint, ¶20; Lichter Answer, ¶20; Noteholder Decl., ¶8.

## TRANSFER AND ASSIGNMENT OF THE LOAN AND LOAN DOCUMENTS TO WELLS FARGO BANK, N.A., AS TRUSTEE FOR MORGAN STANLEY CAPITAL I INC., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-IQ12

12. Original Lender assigned the Loan and the Original Loan Documents to Wells Fargo Bank, N.A., as Trustee for Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2006-IQ12 ("**Wells Fargo**"). *See* Complaint, ¶22; Lichter Answer, ¶22; Noteholder Decl., ¶9; Declaration of Abraham Schwartz in Opposition to Plaintiff's Motion for the Appointment of a Receiver ("**Schwartz Decl.**"), ¶5 (attached as Exhibit 6 to the Arias Decl.); Declaration of Steven Greenberg in Opposition to Plaintiff's Motion for the Appointment of a Receiver ("**Greenberg Decl.**"), ¶22 (attached as Exhibit 7 to the Arias Decl.).

13. In connection with the assignment to Wells Fargo, Original Lender executed and delivered to Wells Fargo the following documents:

a. that certain Allonge executed by Original Lender to Wells Fargo. *See* Complaint, ¶ 22(a), Ex. E; Lichter Answer, ¶22; Noteholder Decl., ¶10(a).

b. that certain Assignment of Mortgage and Security Agreement, dated effective as of December 21, 2006, which was properly recorded with the Clerk's Office on May 30, 2007, at Book 12059, Page 1227 as Instrument No. 7070234. *See* Complaint, ¶22(b), Ex. F; Lichter Answer, ¶22; Noteholder Decl., ¶10(b).

c. that certain Omnibus Assignment of Loan Documents, dated effective as of December 21, 2006, assigning to Wells Fargo, among other things, the Guaranty. *See* Complaint, ¶22(c), Ex. G; Lichter Answer, ¶22; Noteholder Decl., ¶10(c).

14. As of the date of the commencement of this action, as a result of the transaction described above, evidenced by each of the written assignments, Wells Fargo was the owner and holder of the Note, the Mortgage, the Assignment of Leases, and each and all of the other Original Loan Documents. *See* Complaint, ¶23; Lichter Answer, ¶23; Noteholder Decl., ¶11.

**ASSUMPTION OF ORIGINAL LOAN DOCUMENTS**
**BY NEWARK BORROWER**

15. On or about June 12, 2009, Ivy transferred 24% of its initial 40% ownership interest in the Property to Newark 300, LLC ("**Newark Borrower**") and Newark Borrower agreed to become jointly and severally liable as tenants-in-common with Original Borrower for the obligations of Original Borrower under the Original Loan Documents (the "**Newark Borrower Assumption**"). *See* Complaint, ¶24; Lichter Answer, ¶24; RFA Response, ¶16; Noteholder Decl., ¶12.

16. In connection with the Newark Borrower Assumption, Original Borrower, Original Guarantor and Newark Borrower executed and delivered to Wells Fargo, among other things, that certain Assumption Agreement dated September 16, 2009, which was properly recorded with the Clerk's Office on October 2, 2009, at Book 12220, Page 4691 as Instrument No. 9085615 (the "**Newark Borrower Assumption Agreement**"). *See* Complaint ¶25, Ex. H; Lichter Answer, ¶25; RFA Response, ¶16; Noteholder Decl., ¶13.

**ASSUMPTION OF ORIGINAL LOAN DOCUMENTS BY BORROWER**

17. On or about January 3, 2011, the Original Borrower and Newark Borrower transferred the Property to Borrower. Borrower, Claire Lichter, Alfred Lichter,[2] Joseph Schwartz, Suzette Schwartz, and The Alfred Lichter 2000 Family Trust (together with Claire, Alfred Lichter, Joseph Schwartz, and Suzette Schwartz, collectively, "**Guarantor**") assumed all obligations under the Loan Documents and released the Original Borrower, Newark Borrower, and Original Guarantor from certain obligations pursuant to the Loan Documents, subject to the provisions set forth in the Borrower Assumption Agreement (defined below) (the "**Borrower Assumption**"). *See* Complaint, ¶26; Lichter Answer, ¶26; RFA Response, ¶18; Noteholder Decl., ¶14; Schwartz Decl., ¶5; Greenberg Decl., ¶2.

18. In connection with the Borrower Assumption, Wells Fargo, Borrower, Original Borrower, Newark Borrower, as well as Steven Greenberg, Jeffrey Greenberg, and Ivy Equities, L.L.C. (collectively, the "**Original Guarantor**") executed that certain Assumption and Release Agreement (the "**Borrower Assumption Agreement**"), dated January 3, 2011 and recorded with the Clerk's Office on January 10, 2011 at Book 12291, Page 5216, Instrument Number 11002811. *See* Complaint, ¶27, Ex. I; Lichter Answer, ¶27; RFA Response, ¶20; Noteholder Decl., ¶15.

19. In connection with the Borrower Assumption, Guarantor executed and delivered to Wells Fargo that certain Guaranty (the "**Guaranty**"), dated January 3, 2011, by Guarantor for the benefit of Wells Fargo. *See* Complaint, ¶28, Ex. J; Lichter Answer, ¶28; RFA Response, ¶19; Noteholder Decl., ¶16.

---

[2] After signing the Guaranty, Alfred Lichter passed away. Thus, Claire is named both in her individual capacity and in her capacity as the Executrix of the Estate of Alfred Lichter. *See* Joint Discovery Plan, dated September 19, 2017 (Exhibit 2 to the Arias Decl.), at fn. 1.

20. Pursuant to Section 1.1 of the Mortgage, Borrower granted Wells Fargo a security interest in, *inter alia*, all machinery, equipment, goods, inventory, fixtures, and other personal property located on the Property (collectively, the "**Personal Property**"), as further security for repayment of the Note. *See* Complaint, ¶29; Lichter Answer, ¶29; RFA Response, ¶7; Noteholder Decl., ¶17.

21. Such security interest in Original Borrower's Personal Property was perfected by:

a. that certain UCC-1 Financing Statement ("**Delaware UCC**"), filed with the Delaware Department of State on January 6, 2011 at Filing No. 20110358922 and continued by that certain UCC-3 continuation filed on September 15, 2015 at Filing No. 20154615836. *See* Complaint, ¶30(a), Ex. K; Lichter Answer, ¶30; RFA Response, ¶24; Noteholder Decl., ¶18(a).

b. that certain UCC-1 Financing Statement ("**County UCC**"), recorded with the Clerk's Office on January 30, 2017 as Instrument Number 2017008503. *See* Complaint, ¶30(b), Ex. L; Lichter Answer, ¶30; RFA Response, ¶26; Noteholder Decl., ¶18(b).

22. The Original Loan Documents, together with the Newark Borrower Assumption Agreement, Borrower Assumption Agreement, Guaranty, Delaware UCC and County UCC are hereinafter referred to as the "**Loan Documents**." *See* Complaint, ¶31; Lichter Answer, ¶31; Noteholder Decl., ¶19.

23. Pursuant to the above-described assumption, release and/or transfer of the Loan Documents and Property, Defendants are the current obligors and under the Loan Documents. *See* Complaint, ¶32; Lichter Answer, ¶32; RFA Response, ¶28; Noteholder Decl., ¶20; Schwartz Decl., ¶5.

**TRANSFER AND ASSIGNMENT OF THE LOAN**
**<u>AND LOAN DOCUMENTS TO NOTEHOLDER</u>**

24. On May 11, 2018, Wells Fargo assigned the Loan and all Loan Documents, including the Note and Mortgage, to Four Gateway Center Note Owner LLC ("Noteholder"). *See* Noteholder Decl., ¶21.

25. In connection with the assignment to Noteholder, Wells Fargo executed and delivered to Noteholder the following documents:

a. that certain Allonge executed by Wells Fargo to Noteholder. *See* Noteholder Decl., ¶22(a), Ex. 1.

b. that certain Assignment of Mortgage and Security Agreement, dated effective as of December 21, 2006, which was properly recorded with the Clerk's Office on May 30, 2007, at Book 12059, Page 1227 as Instrument No. 7070234. *See* Noteholder Decl., ¶22(b), Ex. 2.

c. that certain Assignment of Leases and Rents, dated effective as of December 21, 2006, which was properly recorded with the Clerk's Office on May 30, 2007, at Book 12059, Page 1235 as Instrument No. 7070237. *See* Noteholder Decl., ¶22(c), Ex. 3.

d. that certain UCC-1 Financing Statement ("**County UCC**"), recorded with the Clerk's Office on May 30, 2018 as Instrument No. 2018046705. *See* Noteholder Decl., ¶22(d), Ex. 4.

e. that certain UCC-1 Financing Statement ("**Delaware UCC**"), filed with the Delaware Department of State on May 30, 2018 at Filing No. 20183655541. *See* Noteholder Decl., ¶22(e), Ex. 3.

26. As of the date hereof, as a result of the transaction described above, evidenced by each of the written assignments, Noteholder is the owner and holder of the Note, the Mortgage, the Assignment of Leases, and each and all of the other Original Loan Documents. *See* Noteholder Decl., ¶23.

**BORROWER'S DEFAULT UNDER THE LOAN DOCUMENTS**

27. Borrower is in default of its obligations to Noteholder under the Note and Mortgage based on, among other things, Borrower's failure to timely pay all amounts required by the Loan Documents on the Maturity Date (the "**Maturity Default**"). *See* Complaint, ¶33; Lichter Answer, ¶33; RFA Response, ¶¶29-32; Noteholder Decl., ¶24; Schwartz Decl., ¶16 (acknowledging that the Maturity Date has occurred).

28. This failure constitutes an event of default as defined under the Loan Documents. *See* Complaint, ¶34; Lichter Answer, ¶34; RFA Response, ¶32; Noteholder Decl., ¶25; Loan Agreement (Exhibit B to the Complaint), at §10.1(a)(1).

29. Accordingly, Noteholder demanded payment of the Loan and informed the Borrower of their default in accordance with the terms of the Loan Documents by that certain Notice of Maturity Default and Demand for Payment letter sent to Borrower and Guarantor on January 4, 2017 (the "**Notice of Maturity Default**"). *See* Complaint, ¶35, Ex. M; Lichter Answer, ¶35; RFA Response, ¶¶33-34; Noteholder Decl., ¶25.

30. Borrower has failed to cure such defaults, despite demand for payment under the Notice of Maturity Default. *See* Complaint, ¶36; Lichter Answer, ¶36; RFA Response, ¶38; Noteholder Decl., ¶26; Schwartz Decl., ¶16.

31. Borrower was informed of the Maturity Default and demand was made upon Borrower to pay all sums due under the Loan Documents (collectively, the "**Indebtedness**"). *See* Complaint, ¶37; Lichter Answer, ¶37; RFA Response, ¶¶33-34,38; Noteholder Decl., ¶27; Schwartz Decl., ¶16.

32. To date, Borrower has failed to pay the Indebtedness due under the Loan Documents, and Borrower remains in default. *See* Complaint, ¶38; Lichter Answer, ¶38; RFA Response, ¶38; Noteholder Decl., ¶28.

33. Because an Event of Default has occurred, Plaintiff is entitled to, among other things, foreclosure of the Mortgage. *See* Mortgage (Ex. C to the Complaint), at §7.1.

**BORROWER'S AND GUARANTOR'S RECOURSE LIABILITY**

34. The Guaranty is what is known in the industry as a "bad boy," "springing recourse," or "carve-out" guaranty. *See* Complaint, ¶42; Lichter Answer, ¶42; Noteholder Decl., ¶29.

35. The Loan Documents provide that the Indebtedness becomes fully recourse if certain enumerated "recourse" events occur, triggering "springing" recourse liability (the "**Recourse Triggers**"). *See* Complaint, ¶42; Lichter Answer, ¶42; Noteholder Decl., ¶30.

36. Section 11.22 of the Loan Agreement and Section 1.2 of the Guaranty set forth the "springing recourse events" that render the Loan fully recourse to Borrower and Guarantors, respectively. Specifically, the Loan becomes fully recourse to the Borrower and Guarantor in the event that, among other things, "Borrower fails to obtain Lender's prior consent to any subordinate financing or other voluntary Lien encumbering the Property." *See* Complaint, ¶44, Ex. B, pp. 79-80; Lichter Answer, ¶44; RFA Response, ¶4; Noteholder Decl., ¶32; Loan Agreement (Ex. B to the Complaint), at §11.22; Note (Ex. A to the Complaint), at Art. 8); Guaranty (Ex. J to the Complaint), at §1.2.

37. Pursuant to Section 1.1 of the Guaranty, Guarantor is liable for the Guaranteed Obligations (defined below) and "irrevocably and unconditionally guarantee[d] to [Noteholder] the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise." *See* Complaint, ¶45, Ex. J; Lichter Answer, ¶45; Noteholder Decl., ¶33; Guaranty (Ex. J to the Complaint), at §1.1.

38. Pursuant to Section 1.2 of the Guaranty, the term "**Guaranteed Obligations**" is defined to include the Recourse Triggers. *See* Complaint, ¶46; Lichter Answer, ¶46; Noteholder Decl., ¶34; Guaranty (Ex. J to the Complaint), at §1.2.

39. Borrower is a party to that certain Amended and Restated Grant and Agreement, by and among One Gateway Center Condominium Association, Inc., Third Newark Gateway Urban Renewal Association, Gateway Four Urban Renewal, L.P., Gateway South Urban Renewal Association, and The Prudential Insurance Company of America, dated as of December 21, 1999 and recorded with the Clerk's Office on December 27, 1999 at Deed Book 5664, Page 680 (as amended, modified, and assigned) (the "**Concourse Agreement**"). *See* Concourse Agreement (Ex. 4 to the Arias Decl.); Complaint, ¶47; Lichter Answer, ¶47.

40. Pursuant to the Concourse Agreement, Gateway Concourse Association, Inc. (the "**Concourse Association**") is authorized to assess certain amounts against the Borrower (the "**Concourse Assessments**") in connection with the Concourse Association's costs for performing its duties to maintain and service certain of the concourses and walkways at or near the Property. *See* Concourse Agreement, §§5-8; Complaint, ¶48; Lichter Answer, ¶48; RFA Response, ¶¶42-43; Schwartz Decl., ¶¶4,6; Greenberg Decl., ¶3.

41. Borrower is obligated to pay the Concourse Assessments. *See* Concourse Agreement, §§7-8; Complaint ¶49; Lichter Answer ¶49; RFA Response, ¶43; Borrower's Income & Expense Statements (Ex. 14 to Arias Decl.) (each containing line items for "Association Fees" due and owing by Borrower).

42. Borrower's failure to pay the Concourse Assessments is an Event of Default under the Concourse Agreement and permits the Concourse Association to file liens against the Property. *See* Concourse Agreement, §9; Complaint, ¶50; Lichter Answer, ¶50.

43. In or about December 2012, Borrower voluntarily ceased payment of certain Concourse Assessments. *See* Complaint, ¶51; Lichter Answer, ¶51; RFA Response, ¶44; Schwartz Decl., ¶9; Greenberg Decl., ¶16.

44. The Loan Documents require Borrower to pay the Concourse Assessments. *See* Loan Agreement ¶¶ 4.1.2, 4.2.2; Mortgage § 3.4.

45. The Loan Documents do not permit Concourse Liens to be filed against the Property. *See* Loan Agreement (Ex. B to Arias Decl.), at ¶¶4.2.2, 8.1, 10.1(a)(ii), 11.22; Mortgage (Ex. C to Arias Decl.), at § 3.4; Defendants' Correspondence, Bates Nos. Lichter002333 (Ex. 10 to the Arias Decl.) (providing notice to Borrower that Concourse Liens violate provisions of Loan Documents).

46. Borrower had no legitimate basis to dispute that the Concourse Assessments it did not pay were due and owing to the Concourse Association. *See* Complaint, ¶51; Lichter Answer, ¶51; Defendants' Correspondence, Bates Nos. Lichter002584-Lichter002585 (Ex. 11 to the Arias Decl.) (Borrower's representative acknowledges that "Ultimately, we will be required to pay the arrears [owed to the Concourse Association…."); Borrower's Income & Expense Statements (Ex. 14 to Arias Decl.) (each containing line items for "Association Fees" due and owing by Borrower).

47. Borrower purposefully refused to pay the Concourse Assessments in order to obtain a tactical advantage in its negotiations with the Concourse Association. *See* Schwartz Decl., ¶¶9 ("we made the necessary business decision in 2012 to withhold payment of some of the Concourse Association dues…"), ¶13; Greenberg Decl., ¶¶16-17 ("we were instructed by [Borrower] in 2012 to withhold payment of Concourse Association dues…"); Defendants' Correspondence, Bates Nos. Lichter002345-Lichter002351 (Ex. 13 to the Arias Decl.) ("There is

no problem from a cash flow perspective in discharging this lien and meeting monthly obligations. The problem is more strategic….).

48. During the time Borrower was not paying the Concourse Assessments, Borrower had funds available to pay the Concourse Assessments. *See* Schwartz Decl., ¶¶9,13; Greenberg Decl., ¶17 ("On behalf of Lichter Gateway, Heritage has maintained and accrued funds in a management account that are available to pay the Concourse Association if and when it resolves the necessary repairs."); Borrower's Income & Expense Statements (Ex. 14 to Arias Decl.) (each containing line items for "Association Fees" due and owing by Borrower); Defendants' Correspondence, Bates Nos. Lichter002345-Lichter002351 (Ex. 13 to the Arias Decl.) ("There is no problem from a cash flow perspective in discharging this lien and meeting monthly obligations. The problem is more strategic….).

49. During the time Borrower was not paying the Concourse Assessments, Borrower submitted income and expense statements to Plaintiff containing line items labeled "Association Fees" which represent the Concourse Assessments as costs and expenses associated with the Property. *See* Borrower's Income & Expense Statements (Ex. 14 to Arias Decl.); Declaration of Michael Nikula in Support of Plaintiff's Petition for Appointment of Receiver (Ex. 16 to Arias Decl.), ¶35.

50. The following liens (the "**Concourse Liens**") were filed against Borrower and the Property:

a. Notice of Assessment Lien by Concourse Association against the Property for a lien in the amount of $103,510.56, recorded on July 19, 2013 in the Clerk's Office at Book 12446, Page 6425 as Instrument No. 13064539.

b. Notice of Assessment Lien by Concourse Association against the Property for a lien in the amount of $262,152.87, recorded on June 10, 2015 in the Clerk's Office at Book 12558, Page 7040 as Instrument No. 15044326.

c. Notice of Assessment Lien by Concourse Association against the Property for a lien in the amount of $340,191.32, recorded on March 16, 2016 in the Clerk's Office as Instrument No. 2016023085.

*See* Complaint, ¶52; Lichter Answer, ¶52; RFA Response, ¶47; Noteholder Decl., ¶35.

51. At no time before or after the Borrower withheld payment of the Concourse Assessments, did Borrower obtain the prior consent of Plaintiff to withhold such payments. *See* Defendants' Correspondence, Lichter00028-Lichter00033 (Ex. 9 to the Arias Decl.) (indicating Plaintiff first became aware of Concourse Liens after they were filed), Lichter002333 (Ex. 10 to Arias Decl.) (advising Borrower that Concourse Liens violated provisions of Loan Documents).

52. At no time before or after the Concourse Liens were filed, did Borrower obtain the prior consent of Plaintiff to the filing of the Concourse Liens. *See* Complaint, ¶57; Lichter Answer, ¶57; Noteholder Decl., ¶36*;* Defendants' Correspondence, Lichter00028-Lichter00033 (Ex. 9 to the Arias Decl.) (indicating Plaintiff first became aware of Concourse Liens after they were filed), Lichter002333 (Ex. 10 to Arias Decl.) (advising Borrower that Concourse Liens violated provisions of Loan Documents).

53. Upon learning that the Concourse Liens were filed, Plaintiff's representatives repeatedly requested that Borrower remove the Concourse Liens. *See* Defendants' Correspondence, Bates Nos. Lichter000020 and Lichter002428 (Ex. 9 to the Arias Decl.) (requesting that Concourse Liens be removed on November 13, 2013, December 4, 2013, December 9, 2013, December 18, 2013); Lichter002333 (Ex. 10 to Arias Decl.) (requesting that Concourse Liens be removed on July 13, 2015); Lichter003037-Lichter003042 (Ex. 13 to the Arias Decl.) (requesting that Concourse Liens be removed on June 16, 2015 and June 30, 2015); Lichter3037 (Ex. 12 to Arias Decl.) (stating on January 23, 2014 that Borrower was "under tremendous pressure from my servicer to either have the lien lifted, or to commence litigation against the Association and Advance").

54. Borrower represented to Noteholder's predecessor in interest that it would cause the Concourse Liens to be removed. *See* Defendants' Correspondence, Bates Nos. Lichter000028-Lichter000033 (Ex. 9 to the Arias Decl.).

55. Borrower knew that the Concourse Liens were a violation of the Loan Documents. *See* Defendants' Correspondence, Bates No. Lichter002333 (Ex. 11 to the Arias Decl.).

56. Despite having the funds available to remove the Concourse Liens and its representations to Noteholder's predecessors in interest that it would do so, Borrower permitted the Concourse Liens to be filed and remain as encumbrances on the Property. *See* Complaint, ¶52; Lichter Answer, ¶52; Schwartz Decl., ¶¶9,13; Greenberg Decl., ¶17; Borrower's Income & Expense Statements (Ex. 14 to Arias Decl.); Defendants' Correspondence, Bates Nos. Lichter002345-Lichter002351 (Ex. 13 to the Arias Decl.).

57. After the Concourse Association commenced a state court litigation to enforce its Concourse Liens, Borrower and the Concourse Association reached a settlement pursuant to which Borrower satisfied the Concourse Liens, and the Concourse Liens were discharged. *See* March 22, 2017 Letter to Court from David L. Menzel (Doc. No. 59).

58. Borrower has defaulted under Article 8 of the Note, which incorporates Section 11.22 of the Loan Agreement, and Guarantor has defaulted under the Guaranty. *See* Complaint, ¶59; Lichter Answer, ¶59; Noteholder Decl., ¶37; Note (Ex. A to Complaint), Art. 8; Loan Agreement (Ex. B to Complaint), §11.22; Guaranty (Ex. J to Complaint), at §§1.2, 1.5.

59. Borrower and Guarantor are liable for the full amount of the Indebtedness as a result of Borrower's failure to obtain Noteholder's prior consent to the voluntary Concourse

Liens encumbering the Property and the Recourse Events. *See* Complaint, ¶60; Lichter Answer, ¶60; Noteholder Decl., ¶38.

60. Pursuant to the Loan Agreement and Guaranty, Borrower and Guarantor are liable to Noteholder for full payment of all amounts due under the Note, as well as all other amounts due under the Loan Documents, including expenses and reasonable attorneys' fees incurred by Noteholder in connection with the enforcement of the Guaranty and Loan Documents. *See* Complaint, ¶62*;* Lichter Answer, ¶62.

61. As of June 15, 2018, there is due, owing, and payable to Plaintiff a total of $60,266,874.78, consisting of: (i) $56,166,843.00 in principal; (ii) $2,389,774.35 accrued and unpaid interest at the contract rate; (iii) $4,632,445.26 accrued and unpaid interest at the default rate; and (iv) $417.00 in administrative fees; less (v) $2,922,604.83 in escrows and reserves. *See* Noteholder Decl., ¶40.

THOMPSON & KNIGHT LLP
*Attorneys for Plaintiff*

By: s/ Vivian M. Arias
Vivian M. Arias
900 Third Avenue, 20th Floor
New York, New York 10022
Vivian.Arias@tklaw.com
(212) 751-3325